*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0074P (6th Cir.)
File Name: 02a0074p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

NATIONAL CITY BANK,
NORTHWEST,
    *Plaintiff-Appellant,*

    *v.*

COLUMBIAN MUTUAL LIFE
INSURANCE COMPANY, et al.,
    *Defendants-Appellees.*

No. 00-4249

---

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 95-07430—James G. Carr, District Judge.

Argued: January 24, 2002

Decided and Filed: February 27, 2002

Before: MERRITT, BOGGS, and MOORE, Circuit
Judges.

---

**COUNSEL**

**ARGUED:** Thomas S. Zaremba, ROETZEL & ANDRESS,
Toledo, Ohio, for Appellant. Thomas J. Tucker, COOPER &
WALINSKI, Toledo, Ohio, for Appellees. **ON BRIEF:**
Thomas S. Zaremba, ROETZEL & ANDRESS, Toledo, Ohio,

1

for Appellant.   Thomas J. Tucker, Cary Rodman Cooper, COOPER & WALINSKI, Toledo, Ohio, for Appellees.

_____

**OPINION**

_____

MERRITT, Circuit Judge.   Here Columbian, the defendant insurance company, had a contractual right of recoupment or setoff for unearned premiums advanced to its agent.   The agent also gave the plaintiff bank a perfected security interest in its accounts receivable in exchange for a loan.   The question before us is whether the insurance company or the bank is first entitled to recoup its losses from new insurance commissions collected by the insurance company.   Plaintiff, National City Bank, Northwest, brings this diversity action alleging that Defendants, Columbian Mutual Life Insurance Company and Columbian Life Insurance Company, engaged in a series of transactions by which they retained insurance commissions to which they were not entitled.   We agree with the district court that Columbian's right is superior.

In 1993, Columbian began to sell life insurance with the issuance of credit cards.   At that time, Columbian entered into an insurance agency contract with New Beginning Insurance to sell the insurance.   Insurance agent Harold Aubry is the president and sole shareholder of New Beginning Insurance and its companion company New Beginning Financial Alliance.   Under the agency contract, Columbian would advance a percentage of the first-year policy commissions (up to 11/12ths) to New Beginning Insurance upon receipt of a submitted policy application.   The insured under the policy would then be billed monthly on a credit card over the course of the year.   Under the terms of the contract, in situations where the policy was "not taken, not delivered, or otherwise lapsed," New Beginning Insurance was required to repay Columbian the advanced but subsequently unearned commissions.   The agreement between Columbia and New

Beginning Insurance provided a right of recoupment or setoff for Columbian to protect itself in the event that premiums went unpaid. The recoupment language of the agreement stated that Columbian "shall have a first lien on all commissions . . . and the Company [Columbian] *may at any time deduct* from any monies due to the General Agent [New Beginning Insurance] . . . *any debt or debts due* at any time from the General Agent to the Company" (emphasis added).

The result of the business practice between the parties was an accumulation of a large debt on the part of the New Beginning Insurance. From January 1994 to February 1995, Columbian advanced $900,000 to New Beginning Insurance, but by the end of 1994, New Beginning Insurance owed Columbian $638,136.17 in advanced commissions for policies with unpaid premiums.

During the summer of 1994, New Beginning Insurance and its companion company, New Beginning Financial, began to need money to sustain their operations. Aubry obtained a $200,000 line of credit from National City and borrowed $25,000. As collateral for the line of credit, Aubry unconditionally guaranteed the loans by granting National City a first security interest in all accounts receivable of both New Beginning Insurance and New Beginning Financial. In January and February 1995, Aubry borrowed an additional $175,000 from National City. National City perfected its security interest under Article 9 of the U.C.C. by filing the proper financing statements in October 1994. By contrast, Columbian did not perfect its "first lien" until it filed financing statements on August 7, 1995, perfecting its security interest in the assets of New Beginning Insurance.

Starting in March 1995, Columbian ceased advancing commissions to New Beginning for newly sold policies, ending its previous practice. In addition, Columbian used newly earned commissions to recoup the money owed to Columbian by New Beginning Insurance based on advanced commissions on the lapsed policies. Without those newly

The Bank responds that the setoff exclusion contained in § 9-104(i) of the U.C.C. — stating that the provisions of U.C.C. Article 9 "do not apply . . . [t]o any right of set-off" — means that § 9-318 does not protect Columbian's contractual right to "deduct" from its premiums "any debts due" from the agent simply because it is a "set-off" not covered by Article 9. Professor Grant Gilmore, one of the drafters of Article 9 and the author of a major treatise on the subject characterized such arguments based on the so-called "setoff exclusion" as follows: "Of course a right of set-off is not a security interest and has never been confused with one: the statute might as appropriately exclude fan dancing." 1 Gilmore, *Security Interests in Personal Property* (1965) § 10.7, at pp. 315-16. We find no authority for the Bank's argument that the setoff exclusion overrides the basic principle stated in the *Restatement of Contracts* quoted above or § 9-318 of the U.C.C. There is no authority for the proposition that a perfected assignment to a third person takes precedence over a right of recoupment created between the original contracting parties in their contract.

Therefore, the judgment of the district court is affirmed.

generated commissions, New Beginning Insurance defaulted on its operating credit line debt with National City. National City then attempted to collect on the balance of the commissions retained by Columbian. The Bank claimed that Columbian owed these to New Beginning Insurance.

This case was before us previously. Without discussion, the district court found that the contractual setoff right of Columbian took priority over the perfected security interests of National City. We remanded the case to determine whether the agency agreements provided Columbian with a separate contractual right of recoupment or setoff that is distinct from a lien, and whether that right is superior to National City's perfected security interest in New Beginning Insurance's accounts receivable. On remand, the district court again granted summary judgment for Columbian, holding that the contractual right of setoff was a distinct right and that Columbian's contractual right is superior.

To determine which interest takes precedence, we must analyze the basic contractual interests at stake. Strictly speaking, Columbian's contractual right to retain the earned commissions to repay itself for advance commissions is referred to as a right of "recoupment" rather than "setoff," according to *Black's Law Dictionary* (4th ed. 1968) and the authorities cited there. According to these authorities, a right of "recoupment" arises from the same transaction or contract that creates an asset whereas "setoff" is a broader term referring to any claim or demand, however created, that the holder of the asset has against the debtor. *See id.* at 1439-40, defining "recoupment" and distinguishing it from "setoff." Columbian's claim to the commissions derives from the recoupment language in the contract between Columbian and New Beginning Insurance that created the commissions. The commissions are part of premium payments and are paid to Columbian by its insureds. National City's claim to the commissions is subject to Columbian's contract because National City, by its own admission, is only an assignee of New Beginning Insurance's rights under the contract. Under

elementary principles of contract law, an assignor can assign "only what he has" and "is subject to limitations imposed by the terms of that contract [creating the right] and to defenses which would have been available against the obligee had there been no assignment." Restatement (Second) of Contracts § 336, cmt.b (1981). *See Septembertide Publg., B.V. v. Stein and Day, Inc.*, 884 F.2d 675, 680-82 (2d Cir. 1989) (observing that it is the "elementary ancient law" that an assignee "never stands in any better position than his assignor").

Nevertheless, National City claims that under the statutory scheme of the Uniform Commercial Code adopted by Ohio, this common law contract principle is replaced by the statutory requirement preferring the first to perfect, and thus it claims its interest is superior to that of Columbian. This argument is wrong under the plain language of the U.C.C.

National City is correct as a general matter in pointing out that a perfected security agreement, under U.C.C. section 9-201 (Ohio Rev. Code §1309.12), is effective against creditors. However, § 9-201 specifically lists sections providing exceptions to that general rule. One of those sections, 9-318 (Ohio Rev. Code § 1309.37(A)), specifically addresses the situation at issue here:

> (A) . . . the rights of an assignee [of an account] are subject to:
>
> > (1) all the terms of the contract between the account debtor and assignor and any defense of claim arising therefrom . . . .

Ohio Rev. Code § 1309.37(A). Thus, the U.C.C. clearly limits the rights of National City, as the assignee, to those of the assignor, New Beginning Insurance, and makes its right to accounts receivable subject to the provisions of Columbian's contract with New Beginning Insurance, including Columbian's right of recoupment.