2015 UT App 65

## THE UTAH COURT OF APPEALS

MARTIN O. EVANS,
Plaintiff and Appellant,
*v.*
CRAIG C. NIELSEN,
Defendant and Appellee.

Opinion
No. 20130770-CA
Filed March 19, 2015

Fourth District Court, Provo Department
The Honorable Lynn W. Davis
No. 100401526

Barry N. Johnson, David M. Kono, and Joshua L. Lee,
Attorneys for Appellant

Mary Anne Q. Wood, Stephen Q. Wood, and
Jared M. Asbury, Attorneys for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGES
J. FREDERIC VOROS JR. and MICHELE M. CHRISTIANSEN concurred.

ROTH, Judge:

¶1 Martin O. Evans appeals the district court's confirmation of the final award of an arbitrator. Evans argues that we should reverse the district court's confirmation and direct the district court to vacate the arbitrator's award on the grounds that the arbitrator exceeded his authority and refused to hear relevant evidence. We affirm.

BACKGROUND

¶2     This case is premised on a promissory note containing an arbitration agreement. In 2005, Evans and Craig C. Nielsen purchased a number of H&R Block franchises in Idaho and formed several limited liability companies (the Tax Companies). Because Evans lacked the money to fund his portion of the purchase, Nielsen advanced $500,000 with the understanding that Evans would eventually repay Nielsen $256,000 plus interest and make up the balance with "sweat equity" by working for the business. The two men agreed that Evans would own 49% of the Tax Companies and Nielsen would own 51%. This parties formalized the agreement in a promissory note (the Note) signed in October 2005. The Note had a maturity date of October 30, 2006. The Note also provided Nielsen a "right of setoff in all [Evans's] ownership interests in all business ventures, including but not limited to, any interest in any corporation, partnership, limited liability company, and so forth." This provision (the Setoff Provision) also stated that

> [Evans] authorizes [Nielsen], to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such interests, and, at [Nielsen]'s option, to file in court to foreclos[e] such interests to allow [Nielsen] to protect [Nielsen]'s charge and setoff rights provided in this paragraph.

¶3     Nielsen asserts that over the next several years Evans took more than $200,000 in unauthorized compensation from the Tax Companies and that Evans's poor investment choices saddled the Tax Companies with more than $740,000 in uncollectible receivables. In April 2010, out of growing concern for the future of the business, Nielsen took steps to terminate his business relationship with Evans. According to Evans, Nielsen changed the locks on the filing cabinets and blocked Evans's access to the Tax Companies' books and records while Evans was out of

town. Shortly thereafter, Evans and Nielsen were both in attendance as the sole members of the Tax Companies at an annual membership meeting. Nielsen declared the Note in default and that, as a consequence, he had "strictly foreclosed" on all of Evans's membership interests in the Tax Companies, the value of which, Nielsen asserted, was equal to the remaining amount due on Evans's Note. This left Nielsen as the sole member and owner of the Tax Companies.

¶4     Evans filed suit against Nielsen seeking a declaration that Nielsen's seizure of his interests was ineffective and void, as well as preliminary injunctive relief. The matter was eventually referred to arbitration. At arbitration, one of the main disputes between the parties was whether the Setoff Provision in the Note established a true right of setoff or had actually created a security interest requiring foreclosure. This distinction mattered to the parties because the foreclosure of security interests is governed by Utah's Uniform Commercial Code (the UCC) while a "right of recoupment or set-off" is not. *See* Utah Code Ann. § 70A-9a-109(1)(e)–(f), (4)(j) (LexisNexis 2009) (defining in part the scope of the UCC as adopted by the Utah Legislature). Evans argued that Nielsen's foreclosure on his interests in the Tax Companies was ineffective because Nielsen failed to follow the process prescribed by the UCC for foreclosure of security interests. Nielsen countered that the UCC did not apply to the Note in the first place but that even if it did, the UCC limited Evans's recovery to any surplus that a proper foreclosure process would have produced rather than a restoration of Evans's interests in the Tax Companies. *See id.* § 70A-9a-625(4) (stating that a "debtor whose deficiency is eliminated . . . may recover damages for the loss of any surplus" and "may not otherwise recover . . . for noncompliance").

¶5     In an October 2011 interim ruling addressing motions from both sides, the arbitrator concluded that Evans was in default on the Note. The arbitrator then determined that the Note's Setoff Provision was enforceable on two independent

alternative grounds. First, the arbitrator ruled that the Setoff Provision in the Note meant that the "UCC expressly is not applicable to the Parties' Note." In the alternative, however, he ruled that even "[i]f . . . the UCC were to apply" and even if Evans was correct that Nielsen had failed to conduct a proper foreclosure sale, Evans could not simply recover his interest in the Tax Companies. Instead, the arbitrator determined that subsection 625(4) of the UCC limited Evans's recovery to any proceeds in excess of the balance of the Note that would have been realized had the foreclosure been properly conducted. The arbitrator then concluded that, under either the "setoff" or the UCC scenarios, the only "issue left to be decided under the Note is whether the value of [Evans's] Interest in the Tax Companies on April 10, 2010, exceeded the amount of his Debt on the Note at that time and, therefore, whether there was a surplus . . . to which he is entitled."

¶6      Evans submitted a "Request for Clarification," asking the arbitrator to reconsider his ruling that Evans was in default on the Note. Evans argued that neither party had raised default as an issue to be considered in the motions they presented to the arbitrator. Evans maintains that he himself had only assumed the Note was in default for purposes of his motion, which addressed other issues that he deemed independently dispositive. And Evans asserted, as summarized here by the arbitrator,[1] that he had defenses to Nielsen's default claim because "Nielsen in effect agreed to extend the maturity date of the Note or waive the remaining Debt under the Note and, therefore, the Note was not in default on April 10, 2010." The arbitrator responded by issuing a further ruling in which he

---

1. We quote the arbitrator's summary and interpretation of Evans's arguments rather than his own words because the copies of Evans's motion provided in the record on appeal are incomplete.

explained, in essence, that his approach to resolution of the case required a broader consideration of the issues than Evans had outlined in the motion he filed before arbitration: "To determine the effects of the foreclosure, if any, the Arbitrator had to determine whether the Note was in default, which triggers the right of foreclosure. Therefore, the issue of default was submitted to the Arbitrator for determination by the Parties' [motions]." The arbitrator entered a second interim order determining that the value of Evans's interests in the Tax Companies did not exceed the balance due on the Note and concluding that Nielsen was the prevailing party. Later, the arbitrator issued a third and final order restating each of his prior determinations and resolving some remaining issues not pertinent to this appeal. Nielsen then filed a motion in the Fourth District Court to confirm the award, and Evans filed a counter-motion to have the arbitrator's award vacated. The district court confirmed the award. Evans appeals.

ISSUES AND STANDARDS OF REVIEW

¶7     Evans advances two bases for his contention that the district court erred in confirming the arbitrator's award: (1) the arbitrator exceeded his authority in determining that the UCC did not apply to the Note, and (2) the arbitrator refused to hear relevant evidence related to the issue of default. Two standards of review govern here. First, "[t]he standard of review for a trial court is an extremely narrow one giving considerable leeway to the arbitrator, and setting aside the arbitrator's decision only in certain narrow circumstances." *Softsolutions, Inc. v. Brigham Young Univ.*, 2000 UT 46, ¶ 10, 1 P.3d 1095 (citation and internal quotation marks omitted). "The trial court may not substitute its judgment for that of the arbitrator, nor may it modify or vacate an award because it disagrees with the arbitrator's assessment." *Id.* (citation and internal quotation marks omitted); *see also Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 947 (Utah 1996) ("[J]udicial review of arbitration awards should not be

pervasive in scope," and should be affirmed "as long as the proceeding was fair and honest and the substantial rights of the parties were respected." (alteration in original) (citation and internal quotation marks omitted)). Second, on appeal, "[t]here is no *special* standard governing [an appellate court's] review of a district court's decision to confirm, vacate or modify an arbitration award." *Buzas*, 925 P.2d at 948 (emphasis and second alteration in original) (citations and internal quotation marks omitted). "Thus, in reviewing the order of a trial court confirming, vacating, or modifying an arbitration award, we grant no deference to the district court's conclusions [of law] but review them for correctness, and we review the district court's factual findings under a clearly erroneous standard." *Id.* (alteration in original) (citations and internal quotation marks omitted).

## ANALYSIS

### I. The Arbitrator Did Not Exceed His Authority.

¶8 Evans first argues that the district court should have vacated the arbitration award because the arbitrator exceeded his authority. *See* Utah Code Ann. § 78B-11-124(1)(d) (LexisNexis 2012) (stating that a court "shall vacate an award made in the arbitration proceeding if . . . an arbitrator exceeded the arbitrator's authority"). The Utah Supreme Court has recognized "two situations where a district court may find that an arbitrator has exceeded her authority," though the court has also noted these two situations are not exhaustive. *Duke v. Graham*, 2007 UT 31, ¶ 8, 158 P.3d 540. "The first is when the district court determines that an arbitrator's award covers areas not contemplated by the submission agreement. The second is when the district court finds that the award is without foundation in reason or fact." *Id.* (footnote, citations, and internal quotation marks omitted). This second situation "is referred to as the 'irrationality principle' and is based on the assumption . . . that the parties, by their agreement to arbitrate, have given the

arbitrator the authority to decide their dispute on a rational basis." *Softsolutions, Inc. v. Brigham Young Univ.*, 2000 UT 46, ¶ 11, 1 P.3d 1095 (omission in original) (citation and internal quotation marks omitted). Evans appears to invoke the irrationality principle, arguing that the arbitrator's ruling that "Nielsen's seizure of Evans'[s] interest in the Tax Companies was a 'setoff' not subject to Article 9 of the UCC" "lacked any rational basis." He also argues that the alternative holding of the arbitrator that Evans was entitled only to a surplus if the UCC did apply was "simply irrational" because he contends that under the UCC, Nielsen's "purported acceptance [of Evans's interests in the Tax Companies] was ineffective," and therefore "there [was] no surplus or deficiency at issue." Instead, he argues that his interests in the Tax Companies never transferred to Nielsen.

¶9    Evans also argues that the arbitrator exceeded his authority by "manifestly disregard[ing] the law" in determining that the UCC did not apply. "Manifest disregard of the law is a judicially created doctrine stemming from the exceeding authority statutory ground."[2] *Buzas Baseball, Inc. v. Salt Lake*

---

2. It is also a doctrine that Utah courts have never formally adopted. *Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 951 & n.8 (Utah 1996) (analyzing the "manifest disregard of the law" doctrine because it was a ground relied upon by the trial court but leaving for another day discussion of whether this doctrine is recognized in Utah); *Pacific Dev., LC v. Orton* (*Pacific I*), 1999 UT App 217, ¶ 14 n.3, 982 P.2d 94 (declining to decide whether the doctrine applies in Utah but determining that appellant would not have been able to satisfy the doctrine even if the doctrine was recognized), *aff'd in part, rev'd in part*, (*Pacific II*) 2001 UT 36, 23 P.3d 1035 (affirming decision of court of appeals that appellant had not shown manifest disregard but failing to expressly address whether the doctrine applies).

*Trappers, Inc.*, 925 P.2d 941, 951 (Utah 1996); *accord Pacific Dev., LC v. Orton* (*Pacific I*), 1999 UT App 217, ¶ 14, 982 P.2d 94, *aff'd in part, rev'd in part*, (*Pacific II*) 2001 UT 36, 23 P.3d 1035. This doctrine requires more than "mere error as to the law." *Buzas*, 925 P.2d at 951. In this respect, our supreme court has articulated that "[t]he error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." *Id.* (citation and internal quotation marks omitted). Additionally, "the term 'disregard' implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it." *Id.* (citation and internal quotation marks omitted).

¶10   In support of his arguments that the arbitrator exceeded his authority by deciding that Nielsen's seizure of Evans's interests in the Tax Companies constituted an allowable setoff under the Note's Setoff Provision, Evans contends that "[s]etoff only works to cancel out mutual debts through disposition of the *creditor's* obligation to the debtor, while a security interest gives a creditor the right to seize a *debtor's* assets to satisfy a debt." He also argues the distinction between setoff and foreclosure is obvious and cites *National City Bank, Northwest v. Columbian Mutual Life Insurance Co.*, 282 F.3d 407 (6th Cir. 2002), which states, "Of course the right of set-off is not a security interest and has never been confused with one: the [UCC] might as appropriately exclude fan dancing." *Id.* at 410 (citation and internal quotation marks omitted). Evans therefore argues that Nielsen's seizure of his ownership in the company was clearly a foreclosure in substance, even if it was undertaken in the form of a "setoff" under the Note. Thus, he contends, the arbitrator's determination that Nielsen's action was a setoff and that the UCC did not apply was irrational and manifestly disregarded the law.

¶11   But our role is not to review the arbitrator's award for legal error. *See Buzas*, 925 P.2d at 948. Instead, our only task is to decide whether the district court erred in determining that the

arbitrator did not exceed his authority and in ultimately confirming the arbitration award. *See id.* In this case, we conclude that the district court did not err.

¶12    In its ruling, the district court first determined that it could only find that the arbitrator had exceeded his authority if the award "is 'without foundation in reason or fact' [or] is based on a 'manifest disregard of the law.'" (Quoting *Buzas*, 925 P.2d at 941, 950–51.) And the court recognized that the scope of its review of the award was constrained; that is, the district court was "not to determine whether the UCC should or should not apply, only to determine whether there is a rational basis to not apply the UCC." *See Softsolutions, Inc.*, 2000 UT 46, ¶ 10. The court then noted that "a setoff is a counterclaim or recoupment which a person may have against another . . . to satisfy whatever is owed," and it also observed that the parties specifically contracted with regard to both the meaning of "setoff" as well as Nielsen's ability to satisfy any debt owed to him through a setoff of Evans's business interests. The district court ultimately concluded that under these circumstances, "it was reasonable for the arbitrator to hold that Nielsen was exercising his right to setoff Evans'[s] business interests" and "proper for the arbitrator to exclude the UCC from consideration." We agree.

¶13    The standard for showing either irrationality or manifest disregard for the law in an arbitration award is very high. At arbitration, Nielsen argued that the Note was enforceable and created setoff rights specifically excluded from the UCC by subsection 109(4)(j). *See* Utah Code Ann. § 70A-9a-109(4)(j) (LexisNexis 2009) (stating that "[t]his chapter does not apply to . . . a right of recoupment or set-off," with certain exceptions not applicable here). The arbitrator agreed with Nielsen, citing the same subsection and stating, "Having considered the applicable provisions of the UCC and the Parties['] briefs and arguments, the Arbitrator has determined that the UCC expressly is not applicable to the Parties' Note." Evans contends this determination was irrational, arguing that the action taken by

Nielsen was not a setoff but a failed attempt at strict foreclosure of a UCC security interest. Evans asserts this attempt was ineffective in transferring Evans's interests in the Tax Companies to Nielsen because Nielsen did not comply with the UCC's requirements governing strict foreclosure. *See id.* § 70A-9a-620.

¶14　Evans's argument is certainly plausible. The Setoff Provision in the Note could be interpreted as creating a true setoff falling outside of the UCC rather than a security interest appropriately governed by the UCC. But the arbitrator relied heavily on the parties' express agreement that Nielsen could choose to "setoff" Evans's ownership interests in the Tax Companies against any amount Evans owed Nielsen under the Note. Were the district court required to review the award under the standards applicable to questions of law on appeal, Evans's arguments might have prevailed. But the district court does not review an arbitration award for legal error. Rather, as noted in *Buzas*, an arbitrator's award may not be set aside unless it is so "completely irrational" that "reasonable minds could agree that . . . [the award] was not possible under a fair interpretation of the [evidence]." 925 P.2d at 950 (alterations and omission in original) (citations and internal quotation marks omitted); *see also id.* ("[T]he irrationality principle must be applied with a view to the narrow scope of review in arbitration cases." (citation and internal quotation marks omitted)). So while Evans's contentions may have merit in a broader sense (something we do not decide here), the district court's only duty was to determine whether the arbitrator's award was "without foundation in reason or fact," not whether it was correct as a matter of law. *See id.* (citation and internal quotation marks omitted). Evans has failed to demonstrate that the district court erred when it answered affirmatively the question of whether the arbitrator had "a rational basis to not apply the UCC" in this case where the arbitrator's decision rested heavily on the language of the Note itself as well as the relevant statutes. *See Softsolutions, Inc. v. Brigham Young Univ.*, 2000 UT 46, ¶ 11, 1 P.3d 1095 (explaining that the "irrationality principle" requires a showing that the

award was "without foundation in reason or fact" (citation and internal quotation marks omitted)).

¶15   We again reserve the question of the applicability of the doctrine of "manifest disregard of the law" for another day, *see supra* ¶ 9 note 2, because Evans has failed to persuade us that even if this doctrine were to be applied to this case, the district court erred in determining that the arbitrator did not simply disregard the law in agreeing with Nielsen's theory of the case instead of Evans's. "Manifest disregard of the law" is "more than error," and Evans has made no claim that the arbitrator failed to "appreciate[] the existence of a clearly governing legal principle but decide[d] to ignore or pay no attention to it." *Buzas Baseball Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 951 (Utah 1996) (citation and internal quotation marks omitted). Rather, as the district court noted, the arbitrator was "cognizant of the governing laws in this matter" and the arbitration award itself clearly spelled out the arguments advanced by Evans and cited the UCC in rejecting them. Indeed, there was considerable legal dispute over the meaning of the Note's Setoff Provision and whether it fell within the scope of the UCC, a dispute the arbitrator ultimately resolved—rightly or wrongly—by deciding that the UCC did not apply. But even if the arbitrator was wrong (which, again, we do not decide), his error was one that a rational person might make, not the result of a decision to ignore a clearly applicable legal principle. Accordingly, Evans has failed to carry his burden of demonstrating that the Note, rather than creating a right of setoff against his interests in the Tax Companies, as it stated, instead so clearly created a security interest governed by the UCC that this conclusion was "obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." *See id.* (citation and internal quotation marks omitted); *see also Pacific II*, 2001 UT 36, ¶ 15, 23 P.3d 1035 ("Pacific's manifest disregard argument simply amounts to a 'manifest disagreement' with the arbitrator's findings and final award." (citation and internal quotation marks omitted)).

¶16    Accordingly, we conclude that the district court did not err in determining that the arbitrator was neither "completely irrational" nor acting in manifest disregard of the law when he determined the UCC did not apply to the Note. We therefore decline to overturn the district court's confirmation of the arbitration award.[3]

## II. The Arbitrator Did Not Refuse to Hear Relevant Evidence.

¶17    Evans next contends that the district court should have vacated the arbitration award because the arbitrator refused to hear relevant evidence. *See* Utah Code Ann. § 78B-11-124(1)(c) (LexisNexis 2012) (stating that a court shall vacate an arbitration award when an arbitrator "refused to consider evidence material to the controversy"). Evans argues on appeal, as he did to both the arbitrator and the district court, that the question of whether the Note was in default was not properly before the arbitrator in the parties' cross-motions for summary judgment and that by nevertheless deciding the issue, the arbitrator prevented Evans from offering evidence that the Note was not in default. We conclude that the issue of default was properly before the arbitrator and that the arbitrator did not refuse to hear relevant evidence.

¶18    In support of his argument that the arbitrator could not consider the issue of default, Evans cites case law to the effect that district courts err when they "sua sponte grant summary judgment on an issue when neither party has sought summary judgment on that issue." *See Kell v. State*, 2008 UT 62, ¶ 46, 194 P.3d 913. However, Evans ignores the fact that the principle on

---

3. Because we affirm the district court's decision on this ground, we need not consider the parties' arguments related to the arbitrator's alternative ruling that Nielsen would prevail even if the UCC did apply.

which he relies is grounded in the Utah Rules of Civil Procedure, *see id.* ¶ 47 (citing Utah R. Civ. P. 56), rules that do not apply to arbitration proceedings, *see Jenkins v. Percival*, 962 P.2d 796, 803 (Utah 1998) (Russon, J., dissenting) (summarizing established principles of arbitration and stating that participants who submit claims for arbitration "waive procedural safeguards, including the rules of evidence and the rules of civil procedure"). Instead, the scope of an arbitration is defined by the parties' arbitration agreement. *Pacific II*, 2001 UT 36, ¶ 11. Here, the arbitration agreement was part of the Note signed by both Evans and Nielsen. It reads (with our emphasis):

> ARBITRATION AGREEMENT. Arbitration – Binding Arbitration. [Nielsen] and each party to this agreement her[e]by agree, upon demand by any party, to *submit any Dispute to binding arbitration* in accordance with the terms of this Arbitration Program. A *"Dispute" shall include any dispute, claim or controversy of any kind*, whether in contract or in tort, Legal or equitable, now existing or hereafter arising, *relating in any way to this Agreement* or any related agreement incorporating this Arbitration Program (hereinafter "Documents"), or any past, present, or future loans, transactions, contracts, agreements, relationships, incidents or injuries of any kind whatsoever relating to or involving [Nielsen] or any successor group of [Nielsen]. DISPUTES SUBMITTED TO ARBITRATION ARE NOT RESOLVED IN COURT BY A JUDGE OR JURY.

The issue of whether Evans had defaulted on the Note falls well within the scope of a "dispute, claim or controversy of any kind" related to the Note. Therefore, under the arbitration agreement set forth in the Note and signed by the parties, the issue was clearly within the scope of the arbitration agreement and within the arbitrator's authority to decide as part of his resolution of the

parties' dispute. And the arbitrator considered resolution of the question of whether the Note was in default to be central to his task: "To determine the effects of the foreclosure, if any, the Arbitrator had to determine whether the Note was in default, which triggers the right of foreclosure. Therefore, the issue of default was submitted to the Arbitrator for determination by the Parties' [motions]" Evans has not shown that the arbitrator was bound to await the parties' specific request before he could address the question of default when the parties' cross-motions had already raised issues that clearly implicated the default question.

¶19    Having determined that the issue of default was properly before the arbitrator, we next consider whether the arbitrator refused to hear relevant evidence on that issue. *See* Utah Code Ann. § 78B-11-124(1)(c). In response to Evans's request for clarification on the "default" decision, the arbitrator described the evidence that he had already received on the issue of default and concluded that it was sufficient for him to make a determination. The arbitrator explained that the Note clearly set forth the date of maturity as well as the amount Evans was to pay. Evans had admitted that he paid no more than $125,000 on the $256,000 Note, and the arbitrator noted that the Note was well past its maturity date when Nielsen declared it in default at the Tax Companies' annual membership meeting. Evans argued[4] that Nielsen had agreed, in effect, to either "an extension of the maturity date of the Note" or "a waiver . . . of the remaining Debt" by agreeing that monetary distributions to which Evans was entitled under the Parties' operating agreement could be

---

4. Again, we recite the argument as summarized by the arbitrator. The copies in the record of Evans's motion from which the arbitrator summarized Evan's arguments are incomplete, but there does not appear to be any dispute as to motion's content.

applied to Evans's obligations with regard to other businesses the parties were involved in, "instead of being paid on the Note to secure his interest in the Tax Companies." Evans argued "that this arrangement amounts to an extension of the maturity date of the Note and/or a waiver . . . of the remaining Debt under the Note." The arbitrator explained, however, that the plain language of the Note required him to reject this claim because the Note specifically provided that Nielsen "may delay or forgo enforcing any of [his] rights or remedies under this Note without losing them" and that "any change" to the Note, "unless otherwise expressly stated in writing," would not release a party from liability. (Internal quotation marks omitted.) The arbitrator thus concluded that because "Evans has produced no writing signed by [Nielsen] which extends the maturity date of the Note or waives the remaining Debt under the Note," Evans's contention "fails as a matter of law."

¶20 Thus, what Evans claims was a refusal by the arbitrator to hear relevant evidence—that is, Evans's evidence regarding Nielsen's extension of the Note or waiver of the balance—was really a decision by the arbitrator that the additional evidence Evans proffered was insufficient as a matter of law to require a change in his decision that Evans had defaulted on the Note. In other words, the arbitrator appears to have actually considered the evidence Evans proffered in his motion and found it unpersuasive based on his interpretation of the language of the Note itself and the applicable law.

¶21 "Whether the court agrees with the arbitrator's judgment is irrelevant, as long as the arbitrator construed and applied the contract in an arguably reasonable manner." *Intermountain Power Agency v. Union Pac. R.R. Co.*, 961 P.2d 320, 323 (Utah 1998). Here the arbitrator determined, from the plain language of the Note along with other evidence presented by the parties that the Note was in default and rejected Evans's claims that the due date had been extended or payment of the balance waived. The arbitrator's interpretation and application of the Note was

"arguably reasonable." *See id.* As a consequence, Evans has failed to establish that the arbitration proceeding was not "fair and honest." *See Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 947 (Utah 1996) (citation and internal quotation marks omitted). We therefore decline to disturb the district court's ruling confirming the arbitration award on this ground.

### III. Attorney Fees

¶22 Nielsen requests an award of the attorney fees he incurred on appeal. In general, "[a]n award of fees on appeal requires both a fee award below and success in the appellate court." *Holladay Towne Ctr., LLC v. Brown Family Holdings, LC,* 2008 UT App 420, ¶ 25, 198 P.3d 990, *aff'd*, 2011 UT 9, 248 P.3d 452. The district court expressly denied attorney fees below, ordering the parties to bear their own costs. Nielsen has not challenged that decision on appeal. Therefore, we decline to grant attorney fees on appeal.

¶23 Evans argues that Nielsen should be sanctioned for engaging in "irrelevant and scandalous personal attacks against Evans" in his briefing on appeal. While some of Nielsen's statements may have been intemperate, we conclude that Nielsen's conduct does not rise to a level warranting sanctions.[5]

---

5. Among the statements Evans found objectionable were the following: "Mr. Evans fancied himself an investor and entrepreneur," and "[I]t is hornbook law that no court would use its equitable power to force an unwilling businessman back into a partnership with a profligate and unreliable partner." While we do not find the language worthy of sanction, we caution counsel that such language, at best, diverts focus away from the merits of the argument.

CONCLUSION

¶24    We conclude that the district court did not err in refusing to vacate the arbitration award on the grounds that the arbitrator had exceeded his authority. We also conclude that the arbitrator did not refuse to hear relevant evidence on the issue of default. We therefore affirm the district court's ruling confirming the arbitration order. And because attorney fees were not awarded to Nielsen below, we decline to grant them on appeal.

_____