**2021 UT App 25**

## THE UTAH COURT OF APPEALS

REX SHIPP, STACIA SHIPP, AND SHIPP LIVING TRUST,
Appellees,
*v.*
JARED PETERSON AND ESTATE OF JOHN DANIEL PETERSON,
Appellants.

Opinion
No. 20190203-CA
Filed March 11, 2021

Fifth District Court, St. George Department
The Honorable Jeffrey C. Wilcox
No. 160500058

Jared L. Peterson, Attorney for Appellants

Robert L. Jeffs, Attorney for Appellees

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES DAVID N. MORTENSEN and RYAN M. HARRIS
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     After an arbitrator awarded P&S Group, LLC (P&S) the proceeds of a life insurance policy, Rex Shipp, the listed beneficiary on that policy and the remaining manager of P&S, filed a motion to vacate the award on the grounds that the arbitrator exceeded the scope of his authority because, Shipp argued, P&S was not a party in the arbitration. The district court granted Shipp's motion, and the dispute was submitted to a different arbitrator, who subsequently determined that Shipp was entitled to the proceeds. After the district court affirmed the second arbitration award, the estate of Shipp's former business

partner, John Daniel Peterson (Estate), appealed.[1] We reverse and remand.

BACKGROUND

¶2    John Peterson and Rex Shipp formed P&S in 2004 as a single-asset company to hold commercial property in Richfield, Utah, with each partner holding a 50% interest. Peterson, his spouse, and Shipp also shared ownership (Peterson 25%, his spouse 25%, Shipp 50%) in a restaurant that operated on P&S's property. Peterson and Shipp acted as personal co-guarantors on a $747,000 loan P&S owed to a bank. The business plan envisioned Peterson running the restaurant and Shipp handling financial matters.

¶3    In February 2006, Peterson applied for a $500,000 life insurance policy that designated Shipp as owner and beneficiary. Shipp's spouse was named contingent owner and beneficiary. P&S paid the life insurance premiums, and the premiums were reported as expenses on P&S's tax returns. In November 2010, Peterson died, and Shipp collected the proceeds of the life insurance policy.

¶4    The Estate, Peterson's spouse, and P&S filed a declaratory judgment action against Shipp in district court to recover the insurance proceeds paid out to Shipp. After consideration of the Shipp parties' motion to dismiss, the district court determined that the majority of the causes of action raised in the complaint (excepting those brought by Peterson's spouse independent of her status as beneficiary of the Estate) related to "Shipp's conduct as manager of P&S and/or [were] premised on the

---

1. Jared Peterson appears in his capacity as the personal representative of the Estate. Rex Shipp appears as an individual and with Stacia Shipp as trustees of the Shipp Living Trust.

assertion that the proceeds of the insurance policy belong to P&S." As such, the court determined most of the claims were subject to the mediation and arbitration provisions (Arbitration Clause) contained in P&S's Operating Agreement.[2] The court noted in its dismissal that though the Estate was not a signatory to P&S's Operating Agreement, dismissing the Estate's claims in favor of arbitration was appropriate given that all the claims brought on the Estate's behalf were either related to Shipp's conduct as manager of P&S or predicated on P&S's ownership of the insurance policy proceeds.

¶5 After mediation failed, the parties proceeded to arbitration pursuant to the Arbitration Clause. On the morning of the arbitration hearing, October 31, 2014, the Estate, Peterson's spouse, and Shipp executed a one-page agreement (Arbitration

---

2. Paragraph 8.5 of the Operating Agreement concerns dispute resolution:

> (a) <u>Mediation</u>. *The parties* will endeavor in good faith to resolve *all disputes arising under or related to this Agreement* by mediation according to the then prevailing rules and procedures of the American Arbitration Association.
>
> (b) <u>Arbitration</u>. If the parties fail in their attempt to resolve a dispute by mediation, *they will submit the dispute to arbitration* according to the then prevailing rules and procedures of the American Arbitration Association. Utah law will govern the rights and obligations of the parties with respect to matters in controversy. The arbitrator will allocate all costs and fees attributable to the arbitration between the parties equally. The arbitrator's award will be final and binding and judgment may be entered in any court of competent jurisdiction.

(Emphasis added.) The Operating Agreement does not define the term "parties."

Document) that, among other things, set forth procedural rules governing the arbitration hearing and which provided that the "parties" would pay the arbitrator in "equal shares." In addition, the Arbitration Document contained the following provision:

> The Claimants, Jared Peterson, in his capacity as Personal Representative of the [Estate] and Janice Peterson, as heir of John Daniel Peterson, except as reserved by the court, and Respondents, Rex Shipp, an individual, Rex Shipp and Stacia Shipp, as trustees of the Shipp Living Trust, by and through their attorneys, hereby agree to arbitrate the claim of the [Estate] and Janice Peterson to the insurance proceeds of that certain life insurance policy on the life of John Daniel Peterson issued by Beneficial Life Insurance Company, Respondents.

¶6    The Arbitration Document did not identify P&S as a party to the arbitration or identify P&S as a claimant, although the document stated that "[t]his arbitration is being conducted under [the Arbitration Clause] of the [P&S] Operating Agreement." The issue of whether P&S was a party to the arbitration was never explicitly raised during the arbitration. However, several pleadings filed with the arbitrator by the Peterson side were, on their face, also submitted on P&S's behalf and explicitly identified P&S as a party to the arbitration. And in those pleadings, the Estate took the position that Shipp was named as the beneficiary of the insurance policy in his representative capacity for P&S, and not individually. Throughout the arbitration, the Estate maintained that P&S owned the policy, and a ruling to that effect would mean the Estate would receive one-half of the policy proceeds while Shipp would receive the other half.

¶7    After taking evidence and considering the several pleadings and motions that had been filed, the arbitrator (First Arbitrator) concluded that although Shipp was designated as the

owner and beneficiary in Peterson's life insurance application, Shipp "had no personal insurable interest in the life of . . . Peterson," whereas "P&S had an insurable interest" in Peterson's life. First Arbitrator determined that Shipp had violated his fiduciary duty to P&S by wrongfully converting the insurance proceeds to his own use and thus awarded P&S the insurance proceeds, along with interest and attorney fees.

¶8 Shipp filed a motion to vacate First Arbitrator's decision. The district court granted the motion and agreed with Shipp that First Arbitrator exceeded the scope of the Arbitration Document in awarding the insurance policy proceeds to P&S. Specifically, the court stated that "P&S did not sufficiently participate in the arbitration proceeding to become a de facto party under any theory of implied acquiescence by" Shipp. As relevant here, the district court recognized that the parties' repeated arguments in arbitration about the proper distribution of the insurance proceeds expanded the scope of the arbitration. The district court also acknowledged that Shipp did not come close to showing "a manifest disregard of the law" on the part of First Arbitrator. But the court still ordered that First Arbitrator's award to P&S be set aside on the ground that "after the parties entered [the Arbitration Document] clearly omitting P&S, there [was] no evidence of any conduct implying an agreement to arbitrate with P&S."

¶9 After the district court vacated the first arbitration award, the parties proceeded to a second arbitration before a different arbitrator (Second Arbitrator), who considered the same question as First Arbitrator and came to a different conclusion: Shipp was entitled to the insurance proceeds, less 50% of the premiums (with interest) P&S paid. Second Arbitrator based this determination on two conclusions. First, owing to the business relationship between Shipp and Peterson, "Shipp had an insurable interest in the life of . . . Peterson." Second, "[t]he plain and unambiguous provisions of the application and subsequently issued policy indicate[d] that the beneficiary of the

policy was to be . . . Shipp, not P&S . . . or . . . Shipp as a manager of P&S."

¶10　The district court affirmed the second arbitration award and denied the Estate's motions (1) to vacate the award from the second arbitration and (2) to reconsider the court's prior decision vacating the first arbitration award. The Estate appeals.

ISSUE AND STANDARDS OF REVIEW

¶11　The Estate contends that the district court erred in vacating the first arbitration award. "In reviewing the order of a [district] court confirming, vacating, or modifying an arbitration award, we grant no deference to the district court's conclusions of law but review them for correctness, and we review the district court's factual findings under a clearly erroneous standard." *Evans v. Nielsen*, 2015 UT App 65, ¶ 7, 347 P.3d 32 (quotation simplified).[3] Accordingly, our "scope of review is limited to the legal issue of whether the [district] court correctly exercised its authority in confirming, vacating, or modifying an arbitration award." *Intermountain Power Agency v. Union Pac. R.R. Co.*, 961 P.2d 320, 323 (Utah 1998). Moreover, our analysis "turns on application of the correct standard of review by the district court" of the arbitration award. *See Softsolutions, Inc. v. Brigham Young Univ.*, 2000 UT 46, ¶ 10, 1 P.3d 1095. And the district court's review of the arbitration award "is an extremely narrow one giving considerable leeway to the arbitrator, and setting

---

3. The Estate also contends that the district court erred (1) in failing to reconsider its order vacating the first arbitration award, (2) in failing to submit the first arbitration award to First Arbitrator for clarification, and (3) in confirming the second arbitration award. Because we conclude that the district court erred in vacating the First Arbitrator's decision, we need not address these remaining issues.

aside the arbitrator's decision only in certain narrow circumstances. The [district] court may not substitute its judgment for that of the arbitrator, nor may it modify or vacate an award because it disagrees with the arbitrator's assessment." *Id.* (quotation simplified).

ANALYSIS

¶12 The Estate contends that the district court erred in vacating the first arbitration award after it concluded that P&S was not a party to or a participant in the arbitration and, on that basis, determined that First Arbitrator exceeded the scope of his authority in awarding the insurance proceeds to P&S. We agree with the Estate. Though the Arbitration Document executed on the day of the arbitration did not name P&S, the entire basis for the arbitration was the Arbitration Clause in the P&S Operating Agreement. And it is this Arbitration Clause that caused the district court, in the first place, to refer the claims filed by the Estate and P&S to arbitration and that gave rise to and defined the scope of the arbitration. Moreover, P&S's filings in the arbitration documented its participation in the proceedings. And the issue of P&S's interest in the insurance proceeds was adequately and comprehensively addressed by the Estate's and Shipp's claims to those proceeds. As a consequence, the district court erred in vacating the first arbitration award.

¶13 "Upon motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if . . . an arbitrator exceeded the arbitrator's authority . . . ." Utah Code Ann. § 78B-11-124(1)(d) (LexisNexis 2018). Our supreme court "has recognized two situations where a district court may find that an arbitrator has exceeded her authority, though the court has also noted these two situations are not exhaustive." *Evans v. Nielsen*, 2015 UT App 65, ¶ 8, 347 P.3d 32 (quotation simplified). "The first is when the district court determines that an arbitrator's award covers areas

not contemplated by the submission agreement. The second is when the district court finds that the award is without foundation in reason or fact." *Duke v. Graham*, 2007 UT 31, ¶ 8, 158 P.3d 540 (quotation simplified); *accord Softsolutions, Inc. v. Brigham Young Univ.*, 2000 UT 46, ¶ 15, 1 P.3d 1095; *Intermountain Power Agency v. Union Pac. R.R. Co.*, 961 P.2d 320, 323 (Utah 1998); *Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 949–50 (Utah 1996).

¶14　As the above cases suggest, the remedy of vacating an arbitration award "is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles." *See Dupont v. Tobin, Carberry, O'Malley, Riley, Selinger, PC*, 322 F. App'x 66, 68 (2d Cir. 2009) (quotation simplified). Thus, "the standard for reviewing an arbitration award is highly deferential to the arbitrator." *Buzas Baseball*, 925 P.2d at 946. "Judicial review of arbitration awards should not be pervasive in scope or encourage repetitive adjudications but should be limited to the statutory grounds and procedures for review." *Denison Mines (USA) Corp. v. KGL Inc.*, 2016 UT App 171, ¶ 12, 381 P.3d 1167 (quotation simplified). "Generally, an arbitration award will not be disturbed because the court does not agree with the award as long as the proceeding was fair and honest and the substantial rights of the parties were respected." *Softsolutions*, 2000 UT 46, ¶ 14 (quotation simplified). And "in deciding whether the arbitrator exceeded its authority, we resolve all doubts in favor of arbitration." *Pacific Dev., LC v. Orton*, 1999 UT App 217, ¶ 7, 982 P.2d 94 (quotation simplified), *rev'd in part on other grounds*, 2001 UT 36, 23 P.3d 1035. "We bear these fundamental arbitration principles in mind as we review whether the district court's decision . . . to vacate [First Arbitrator's award to P&S] was correct." *See Denison Mines*, 2016 UT App 171, ¶ 12.

¶15　Furthermore, while the parties' arbitration agreement limits the issues the arbitrator is to decide, an arbitrator has "jurisdiction to resolve the ultimate matter on any of the

reasonable grounds presented by the parties." *Intermountain Power*, 961 P.2d at 324. And "[i]n deciding whether to confirm or vacate the award, we will not assess the wisdom of any particular decisional basis." *Id.*; *see also Softsolutions*, 2000 UT 46, ¶ 18 (concluding that an arbitrator "did not stray from the scope of authority delegated to him by the parties" when he reframed two questions submitted by the parties into one).

### I. P&S was a party to the arbitration under the Operating Agreement's Arbitration Clause.

¶16   Even though P&S was not specifically named in the Arbitration Document the parties signed on the morning of the arbitration hearing, First Arbitrator remained within the scope of his authority when he awarded the insurance proceeds to P&S because P&S's status as a party to the arbitration was already established. Contrary to the district court's determination that "P&S did not sufficiently participate in the arbitration proceeding to become a de facto party under any theory of implied acquiescence by . . . Shipp[]," the record indicates that First Arbitrator clearly had the issue of P&S's claim to the proceeds before him when the dispute over the insurance proceeds was ordered to arbitration under the P&S Operating Agreement and when First Arbitrator rejected Shipp's claim to the insurance proceeds. Moreover, P&S did not need to be further identified as a party to the arbitration when the Estate's claim to the proceeds was derived from P&S's ownership of the insurance policy and the Estate adequately pursued and represented that position during the arbitration.

¶17   Most fundamentally, the fact that P&S's own Operating Agreement compelled arbitration of the dispute indicates that the designation of the parties and arbitrable claims were framed by the complaint filed in this case. In its order dismissing the complaint in favor of arbitration of P&S's and the Estate's claim to the insurance proceeds, the district court explicitly stated,

> All of the claims brought in [the relevant] causes of action on behalf of the [Estate] or P&S GROUP, LLC relate to Defendant Shipp's conduct as manager of P&S and/or are premised on the assertion that the proceeds of the insurance policy belong to P&S. Thus, such claims are disputes arising under or related to the Operating Agreement.

(Quotation simplified.) Furthermore, the Arbitration Document itself explicitly stated, "This arbitration is being conducted under [the Arbitration Clause] of the Operating Agreement of P&S Group, LLC, a limited liability company, signed and dated September, 2007 and signed by John Peterson and Rex. P. Shipp." And the Operating Agreement's Arbitration Clause specified, "The parties will endeavor in good faith to resolve all disputes arising under or related to [the Operating Agreement] by mediation . . . . If the parties fail in their attempt to resolve a dispute by mediation, they will submit the dispute to arbitration . . . ." Thus, the Operating Agreement's Arbitration Clause required arbitration, and the Arbitration Document signed by the parties explicitly acknowledged that the arbitration proceedings were being conducted under the auspices of the Arbitration Clause. In the context of the arbitration proceedings, P&S's Operating Agreement inextricably linked P&S both to Shipp and to the Estate. The foundational role of the Operating Agreement's Arbitration Clause in giving rise to the arbitration proceedings, as well as the fact that P&S was unquestionably a party to the claims referred to arbitration by the district court, demonstrates that P&S's status as a party—and its entitlement to the insurance proceeds—were "contemplated by the submission agreement." *See Duke v. Graham*, 2007 UT 31, ¶ 8, 158 P.3d 540 (quotation simplified).

¶18 Because the Arbitration Clause was the provision that compelled the parties to arbitration and defined the scope of the dispute, the Arbitration Document that the parties signed on the

morning of the arbitration hearing must be viewed as a supplement to the Operating Agreement, not as the foundational document for the arbitration. In essence, the Operating Agreement's Arbitration Clause is the interpretive key for understanding the Arbitration Document. The Arbitration Document itself specified that the Estate and Shipp agreed "to arbitrate the claim of the [Estate] and Janice Peterson to the insurance proceeds." First Arbitrator presumptively took a broad view of the word "claim" to include the right of P&S to the insurance proceeds since the Estate's claim to the proceeds ran directly through P&S. And the record certainly indicates that P&S's participation throughout pre-arbitration proceedings supports a broad view of the arbitration's scope to decide the question of whether P&S was the proper beneficiary of the insurance proceeds. Indeed, P&S, as the owner of the policy, is identified in numerous pre-arbitration documents as a party having a claim to the insurance proceeds.

¶19 Moreover, both sides' arguments to First Arbitrator framed the question of whether P&S was the proper recipient of the insurance proceeds as a dispositive issue that necessarily had to be decided. In its arbitration brief submitted to First Arbitrator, the Estate asserted that "[t]he sole issue at hand requires a determination of who is entitled to the [insurance] [p]olicy [p]roceeds under Utah law." The Estate argued at length that P&S should have been awarded the policy proceeds under various theories. And in June 2015, the Estate submitted a motion for summary disposition to First Arbitrator in which it incorporated the "facts and arguments already presented" in its arbitration brief. Among the issues the Estate identified in this motion was "[a] determination that at all relevant times P&S . . . had an insurable interest in the life of John Peterson." Moreover, in other pleadings filed with the arbitrator, the Estate consistently maintained that Shipp was named as the beneficiary of the insurance policy in his representative capacity for P&S, and not individually.

¶20    In his arbitration filings to First Arbitrator, Shipp also acknowledged that whether P&S was the proper recipient of the insurance proceeds was an issue to be settled by First Arbitrator. He even addressed that issue on its merits, arguing that "[the Estate's] assertion that P&S was the owner of the policy and that . . . Shipp was merely the agent and manager is in error." Shipp went on to argue that P&S was not entitled to the insurance proceeds even though Shipp used both P&S's address on the application and P&S's funds to pay the premiums. To be sure, Shipp argued strongly that he was entitled to the insurance proceeds due to his individual designation as owner and beneficiary in the application and on the policy. But the fact that Shipp explicitly and forcefully rejected the notion that he executed the insurance application as manager and on behalf of P&S indicates his recognition that if the arbitrator rejected his position, proper distribution of the proceeds was still required. Put another way, in arguing that he and only he was entitled to the insurance proceeds, Shipp—at the very least—tacitly acknowledged that how the proceeds were to be distributed was an issue to be resolved by First Arbitrator. Thus, far from showing that First Arbitrator exceeded the scope of his authority, the parties' arbitration filings indicate that the issue to be resolved by First Arbitrator was whether Shipp was entitled to the proceeds individually or whether those proceeds needed to first be routed through P&S and thereby shared with the Estate. And once First Arbitrator decided that issue against Shipp by concluding that Shipp had acted in his capacity as manager of P&S when he executed the insurance application, First Arbitrator had no choice, given how the parties had framed the issue, but to award those proceeds to P&S.

¶21    In sum, the Arbitration Clause in P&S's Operating Agreement both required the arbitration proceedings and defined their parameters. Viewed through this lens, it is evident that P&S was a party to the arbitration and that the issue of whether it (or Shipp) was entitled to the insurance proceeds was squarely presented to First Arbitrator. Thus, the district court

erred in focusing only on the Arbitration Document as defining the scope of arbitration when it should have acknowledged and considered the Operating Agreement's Arbitration Clause as establishing the scope of arbitration.

## II. The first arbitration award was founded in reason and fact.

¶22 First Arbitrator's decision awarding P&S the insurance proceeds had a "foundation in reason [and] fact." *See Duke v. Graham*, 2007 UT 31, ¶ 8, 158 P.3d 540 (quotation simplified). First Arbitrator was presented with the question of whether Peterson and Shipp intended that P&S own the insurance policy or whether Shipp was the beneficiary because he was individually designated as such in the policy. As First Arbitrator pointed out in his findings of fact, several circumstances indicated that the insurance policy was purchased and maintained for the benefit of P&S: Shipp's actions relative to the insurance policy were conducted in his capacity as manager of P&S, P&S made all premium payments on the policy, and Shipp did not show any "personal insurable interest" in Peterson's life. Thus, First Arbitrator could have reasonably concluded that the individual naming of Shipp in the policy as beneficiary was not dispositive with regard to the award of the insurance proceeds. In other words, First Arbitrator had room to conclude that the designation of Shipp as the beneficiary was in his role as agent and manager of P&S and that the intended beneficiary was P&S.[4]

---

4. Indeed, the district court acknowledged that "this was not an open and shut case involving an indisputably unambiguous contract, and . . . [Shipp did] not even come close to showing an obvious error regarding the interpretation of contracts, or that no reasonable person could have concluded that . . . Shipp took out the policy in his capacity as manager for P&S and in behalf of P&S, and that P&S was the owner of the policy through its manager . . . Shipp." (Quotation simplified.)

CONCLUSION

¶23 We conclude that First Arbitrator did not act outside the scope of his authority and that, consequently, the district court erred in vacating the first arbitration award. Accordingly, we reverse and remand with the instruction that the Second Arbitrator's award be vacated and the First Arbitrator's award be reinstated.

―――――