2007 UT 31

Ted DUKE, an individual, and Maria Del Carmen Zavala Cardenas, an individual, Plaintiffs and Appellants,

v.

Randal GRAHAM, an individual, David Graham, an individual, and Craig R. Mariger, in his capacity as purported arbitrator herein, Defendants and Appellees.

No. 20051036.

Supreme Court of Utah.

March 30, 2007.

Nick J. Colessides, John Martinez, Salt Lake City, for plaintiffs.

David R. Williams, Anthony M. Grover, Salt Lake City, for defendants.

PARRISH, Justice:

## INTRODUCTION

¶ 1 The principal question presented by this appeal is whether a member or manager of a limited liability company may be removed through binding arbitration. We answer the question in the affirmative. Although Utah Code sections 48–2c–710(3) and 48–2c–809(1) provide for judicial removal of members and managers of limited liability companies, the legislature did not forbid removal through other means. Additionally, even though the Utah Constitution guarantees Utah citizens their day in court, it does not prevent individuals from bargaining away their rights to judicial proceedings through arbitration agreements.

## BACKGROUND

¶ 2 Ted Duke ("Duke"), Maria Del Carmen Zavala Cardenas ("Cardenas"), Randal Graham, and David Graham all executed an operating agreement for the limited liability company "Way Cool Dirt Cheap, LLC" ("WCDC"). These four individuals became members of the LLC, while Duke and Randal Graham were also designated as managers. The operating agreement provides for arbitration in the event of a dispute among the members.

¶ 3 Soon after the signing of the operating agreement, a conflict arose between Duke and Cardenas on one side and the Grahams on the other. The Grahams alleged that Duke and Cardenas used WCDC assets to create a competing company, Original Way Cool Dirt Cheap. The Grahams notified Duke and Cardenas of their intent to submit the dispute to arbitration, after which Duke and Cardenas filed suit to enjoin the arbitra-tion. The district court eventually ordered the parties to submit to arbitration. Following several evidentiary hearings and oral arguments, the arbitrator issued an award removing Duke and Cardenas as members of WCDC by virtue of Utah Code section 48–2c–710(3)(a) and (c). Although the award itself did not explicitly address the issue, the arbitrator's written comments implicitly revealed the intent to remove Duke as a manager of WCDC.

¶ 4 After the award was issued, the Grahams petitioned the district court to enter a judgment confirming the arbitration award, and Duke and Cardenas moved to vacate it, arguing that the arbitrator had exceeded his authority by expelling Duke and Cardenas as members and Duke as a manager of WCDC. Specifically, Duke and Cardenas asserted that Utah Code sections 48–2c–710(3) and 48–2c–809(1) provide that only a court may remove members and managers of an LLC. Additionally, Duke and Cardenas argued that under the due process and open courts provisions of the Utah Constitution, they cannot be deprived of their property rights to membership and management of an LLC without their "day in court." The district court rejected these arguments and confirmed the arbitration award.

¶ 5 Duke and Cardenas now appeal to this court. They argue that the arbitrator exceeded his authority and that the district court therefore erred in confirming the award.

## STANDARD OF REVIEW

■ ¶ 6 In reviewing the district court's judgment affirming the arbitration award, this court must apply two independent standards of review. The first is the standard of review applicable to this court's review of the district court's proceedings. The second is the standard applicable to the district court's review of the arbitration award. *Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 947 (Utah 1996).

■ ¶ 7 Our review of the district court's ruling involves statutory and constitutional interpretation, both of which involve conclusions of law that we review for correctness,

granting no deference to the district court. *E.g., MacFarlane v. State Tax Comm'n,* 2006 UT 25, ¶ 9, 134 P.3d 1116 (statutory interpretation); *Grand County v. Emery County,* 2002 UT 57, ¶ 6, 52 P.3d 1148 (Utah constitutional interpretation).

¶ 8 A district court's review of an arbitration award should be narrowly confined to those grounds established by statute. *Intermountain Power Agency v. Union Pac. R.R. Co.,* 961 P.2d 320, 322–23 (Utah 1998); *Pac. Dev., L.C. v. Orton,* 2001 UT 36, ¶ 6, 23 P.3d 1035. Utah's Arbitration Act provides that a district court shall vacate an arbitration award when "an arbitrator exceeded the arbitrator's authority." Utah Code Ann. § 78–31a–124(1)(d) (2002). In interpreting the similarly worded predecessor to this provision,[1] we have recognized two situations where a district court may find that an arbitrator has exceeded her authority. The first is when the district court determines that an "arbitrator's award covers areas not contemplated by the submission agreement."[2] *Buzas Baseball,* 925 P.2d at 949; *accord Softsolutions, Inc. v. Brigham Young Univ.,* 2000 UT 46, ¶ 15, 1 P.3d 1095. The second is when the district court finds that the award is " 'without foundation in reason or fact.' " *Buzas Baseball,* 925 P.2d at 950 (quoting *Brotherhood of R.R. Trainmen v. Cent. of Ga. Ry. Co.,* 415 F.2d 403, 411–12 (5th Cir. 1969)); *accord Softsolutions,* 2000 UT 46, ¶ 15, 1 P.3d 1095.

¶ 9 Although this court has previously identified only two situations in which an arbitrator may be found to have exceeded her authority, we have never stated that this list is exhaustive. Duke and Cardenas have argued for two additional scenarios in which a district court should invalidate an arbitra-

tion award for exceeding the proper bounds of the arbitrator's authority under Utah Code section 78–31a–124(1)(d).

¶ 10 First, Duke and Cardenas argue that the legislature has stripped arbitrators of the authority to remove members and managers of LLCs under Utah Code sections 48–2c–710(3) and 48–2c–809(1). Because the legislature has granted arbitrators the authority to make binding adjudications of controversies under the Utah Uniform Arbitration Act, Utah Code Ann. §§ 78–31a–101 to –131 (2002 & Supp.2006), it is fully within the legislature's power to limit an arbitrator's authority to resolve certain issues. Thus, an arbitrator's attempt to resolve issues forbidden by statute would fit squarely within the plain meaning of Utah Code section 78–31a–124(1)(d), which prohibits arbitrators from exceeding their authority.

¶ 11 Duke and Cardenas also argue that the Utah Constitution forbids removing members and managers of LLCs without a judicial proceeding. As we have noted above, arbitrators receive their authority to adjudicate claims from the legislature. *Id.* §§ 78–31a–101 to –131. In turn, the legislature's authority to enact laws is limited by the Utah Constitution. *State ex rel. Breeden v. Lewis,* 26 Utah 120, 72 P. 388, 389 (1903). It therefore follows that the legislature cannot invest an arbitrator with authority to do indirectly what it could not do directly under the Utah Constitution. Accordingly, an arbitration award that violates a provision of the Utah Constitution would also exceed the arbitrator's authority.

¶ 12 Because Duke and Cardenas' arguments fall within one of the specific statutory grounds for district court review of an arbi-

---

1. Prior to May 2003, the Arbitration Act required a district court to vacate an arbitration award if "the arbitrators exceeded their powers." Utah Code Ann. § 78–31a–14(1)(c) (2002) (repealed 2003). Under the current incarnation of the Act, a district court shall vacate an award if "an arbitrator exceeded the arbitrator's authority." *Id.* § 78–31a–124(1)(d). Thus, the only relevant modification to the statute was replacing the word "powers" with the word "authority." Because previous judicial pronouncements have interpreted the meaning of "powers" consistent with the meaning of "authority," often using the two terms interchangeably, *see, e.g., Softsolu-*

*tions, Inc. v. Brigham Young Univ.,* 2000 UT 46, ¶ 15, 1 P.3d 1095; *Buzas Baseball,* 925 P.2d at 949, case law interpreting the previous version of this subsection remains applicable to the current embodiment of the statute.

2. Duke and Cardenas did not raise the issue of the scope of the arbitration agreement before either the district court or this court. We therefore express no opinion as to whether the arbitrator's award extends beyond the scope of that agreement.

tration award, and because this court does not cede any deference to the district court's conclusions of law, we review de novo the question of whether the arbitrator exceeded his authority.

## ANALYSIS

¶ 13 Duke and Cardenas present three main challenges to the arbitrator's award, claiming that (1) Utah Code sections 48–2c–710(3) and 48–2c–809(1) forbid the removal of a member or manager of a limited liability company absent a judicial determination; (2) the due process and open courts provisions of the Utah Constitution forbid the removal of a member or manager of a limited liability company absent a judicial determination; and (3) the arbitration award was invalid because it contained no findings in support of the award. Duke and Cardenas also seek an award of attorney fees, costs, and interest, and the Grahams similarly seek an award of their fees and costs associated with this appeal. We address each of these arguments in turn.

### I. STATUTORY INTERPRETATION OF UTAH CODE SECTIONS 48–2c–710(3) AND 48–2c–809(1)

¶ 14 Duke and Cardenas first assert that the arbitrator exceeded his authority by ordering remedies precluded by the Utah legislature in the LLC Act, specifically Utah Code sections 48–2c–710(3) and 48–2c–809(1). Utah Code section 48–2c–710 describes the methods by which a *member* may be expelled from an LLC. It provides:

A member of a company may be expelled:

(1) as provided in the company's operating agreement;

(2) by unanimous vote of the other members if it is unlawful to carry on the company's business with the member; or

(3) on application by the company or another member, by judicial determination that the member:

(a) has engaged in wrongful conduct that adversely and materially affected the company's business;

(b) has willfully or persistently committed a material breach of the articles of organization or operating agreement or of a duty owed to the company or to the other members under Section 48–2c–807; or

(c) has engaged in conduct relating to the company's business which makes it not reasonably practicable to carry on the business with the member.

Utah Code Ann. § 48–2c–710 (2002). Utah Code section 48–2c–809 governs judicial removal of *managers* of LLCs. It provides:

(1) The district court of the county in this state where a company's designated office is located, or if it has no designated office in this state, its registered office is located, may remove a manager of a manager-managed company in a proceeding commenced either by the company or by its members holding at least 25% of the interests in profits of the company if the court finds that:

(a) the manager engaged in fraudulent or dishonest conduct or gross abuse of authority or discretion with respect to the company; and

(b) removal is in the best interests of the company.

*Id.* § 48–2c–809(1).

¶ 15 To advance their argument that only courts may remove members and managers of LLCs, Duke and Cardenas focus on the language of the LLC Act that provides for the expulsion of members through a "judicial determination," *id.* § 48–2c–710(3), and the removal of managers by a "district court," *id.* § 48–2c–809(1). The plain statutory language, however, does not explicitly limit removal to court decree. It does not provide that members may *exclusively* be removed by judicial determination, or that managers may be removed *only* by a court. Duke and Cardenas' proposed interpretation instead relies upon the interpretive maxim *expressio unius est exclusio alterius* or the inclusion of one thing implies the exclusion of the alternative. *See Field v. Boyer Co.*, 952 P.2d 1078, 1086–87 (Utah 1998); 2A Norman J. Singer, *Statutes and Statutory Construction* §§ 47:23–25 (2000); *Black's Law Dictionary* 602 (7th ed.1999). In short, Duke and

Cardenas propose an interpretation in which the provision of a judicial method of removal implies the legislative intent to deny the power of removal to arbitrators.

 ¶ 16 To test Duke and Cardenas' contentions, we resort to our well-worn canons of statutory construction. "When interpreting statutes, our primary goal is to evince the true intent and purpose of the Legislature." *State v. Martinez*, 2002 UT 80, ¶ 8, 52 P.3d 1276 (internal quotation marks omitted). The first step of statutory interpretation is to evaluate the "best evidence" of legislative intent, namely, "the plain language of the statute itself." *Id.* (internal quotation marks omitted). "[T]he plain language of a statute is to be read as a whole, and its provisions interpreted in harmony with other provisions in the same statute and with other statutes under the same and related chapters." *State v. Schofield*, 2002 UT 132, ¶ 8, 63 P.3d 667 (internal quotation marks omitted).

¶ 17 Utilizing these interpretive tools, we find that Utah statutes do not forbid an arbitrator to remove members or managers of LLCs. First, the LLC Act clearly provides that judicial action is not the exclusive method for removing members and managers inasmuch as it allows removal through mechanisms described in a company's operating agreement. Second, the Utah Arbitration Act broadly defines the scope of an arbitrator's authority.

### A. The LLC Act

 ¶ 18 The LLC Act, taken as a whole, does not support the negative implication advanced by Duke and Cardenas. In their briefing, Duke and Cardenas focus on the language granting courts the power to remove members and managers to argue that arbitrators are implicitly denied a similar power. A reading of the entire statute, however, reveals that other methods of removal are explicitly provided for in the Act, includ-

ing removal through mechanisms specified in an LLC's operating agreement.

¶ 19 The LLC Act expressly provides that *members* of an LLC may be expelled in ways other than judicial proceedings. One of those methods is through the provisions of a company's operating agreement. Utah Code Ann. § 48–2c–710(1) (2002). The Act similarly provides that judicial removal is not the only method of removing *managers* of an LLC. It states that "any manager may be removed with or without cause by the members, at any time, by the decision of members owning a majority of the profits interests in the company." *Id.* § 48–2c–804(6)(e). Of greater relevance to the question before us, though, the LLC Act grants substantial latitude to the members of an LLC to determine the methods of removing a manager through the operating agreement: "[A]n operating agreement may modify the rules of any provision of this chapter that relates to[ ] the management of the company...." [3] *Id.* § 48–2c–502(1). In short, the LLC Act grants broad authority to the members of an LLC to override its default provisions relating to "the management of the company" through recognizing the specific terms contained in a company's operating agreement, including those relating to removal of a manager.

¶ 20 Thus, under the LLC Act, both members and managers may be removed through mechanisms described in a company's operating agreement. This includes removal through agreements to arbitrate. Because removal through arbitration fits within the scheme of the LLC Act, we conclude that the Act, taken as a whole, does not support the negative implication advanced by Duke and Cardenas.

### B. The Arbitration Act

¶ 21 Our conclusion that the legislature did not intend to limit the mechanism for removing members and managers to judicial decree is also consistent with the provisions of another legislative enactment, the Utah Arbi-

---

3. The Act specifically prohibits the modification of certain provisions listed in subsection 48–2c–120(1). Although the operating agreement may not "vary the right to expel a member based on any event specified in Subsection 48–2c–710(3),"

Utah Code Ann. § 48–2c–120(1)(f) (2002), the Act does not limit an operating agreement's authority to devise additional methods of expulsion or removal.

tration Act, Utah Code Ann. §§ 78–31a–101 to –131. The Arbitration Act defines an arbitrator's authority to resolve disputes broadly:

> An agreement contained in a record to submit to arbitration *any* existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract.

Utah Code Ann. § 78–31a–107 (2002) (emphasis added). Thus, "parties can agree to arbitrate any controversy," *Miller v. USAA Cas. Ins. Co.*, 2002 UT 6, ¶ 33, 44 P.3d 663, including the removal of members or managers of an LLC. The Arbitration Act also grants comprehensive discretion to arbitrators in selecting remedies:

> [A]n arbitrator may order any remedies as the arbitrator considers just and appropriate under the circumstances of the arbitration proceeding. The fact that a remedy could not or would not be granted by the court is not a ground for refusing to confirm an award under Section 78–31a–123 or for vacating an award under Section 78–31a–124.

Utah Code Ann. § 78–31a–122(3) (2002). Rather than implying that an arbitrator has limited options in crafting remedies, as argued by Duke and Cardenas, section 78–31a–122 endows arbitrators with wide latitude. Indeed, an arbitrator "may order *any* remedies as the arbitrator considers just and appropriate under the circumstances." *Id.* (emphasis added). These broad grants of authority to resolve controversies and award remedies are consistent with our conclusion that an arbitrator may be delegated the authority to expel members and remove managers of an LLC.

¶ 22 In sum, we reject Duke and Cardenas' statutory argument. Utah Code sections 48–2c–710(3) and 48–2c–809(1) do not imply that arbitrators may not remove members and managers, because the LLC Act allows members to grant such authority to arbitrators in their operating agreement. And even if such a negative implication existed, the specific provisions of the Arbitration Act refute any such implied result.

## II. THE DUE PROCESS AND OPEN COURTS CLAUSES OF THE UTAH CONSTITUTION

■ ¶ 23 Duke and Cardenas also assert that the arbitrator's order expelling them as WCDC members and removing Duke as a WCDC manager violated their constitutional rights to a court proceeding under the due process and open courts provisions of the Utah Constitution. The due process clause provides that "[n]o person shall be deprived of life, liberty or property, without due process of law." Utah Const. art. I, § 7. The open courts clause states:

> All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay; and no person shall be barred from prosecuting or defending before any tribunal in this State, by himself or council, any civil cause to which he is a party.

Utah Const. art. I, § 11. Both of these constitutional provisions have been interpreted to guarantee that litigants will have their "day in court." *Miller v. USAA Cas. Ins. Co.*, 2002 UT 6, ¶ 38, 44 P.3d 663.

■ ¶ 24 Duke and Cardenas' constitutional argument fails because we have clearly held that arbitration proceedings do not violate either of these provisions so long as the parties have waived their right to a judicial proceeding through an express agreement to arbitrate.[4] *Jenkins v. Percival*, 962 P.2d 796, 799 (Utah 1998); *Lindon City v. Eng'rs*

---

4. A litigant's constitutional rights are violated, however, if he is denied his day in court absent an express agreement to arbitrate or if his waiver of the judicial process is not "voluntary, intelligent, and knowing." *Jenkins v. Percival*, 962 P.2d 796, 799 (Utah 1998). A nonjudicial remedy that exceeds the scope of the waiver also violates constitutional protections. *Miller*, 2002

UT 6, ¶ 48, 44 P.3d 663. Because Duke and Cardenas did not raise an argument as to the scope of the arbitration agreement before the district court or this court, but only attacked the constitutionality of the arbitration proceedings in general, we express no opinion as to whether the arbitrator's award exceeded the scope of the arbitration agreement.

*Constr. Co.*, 636 P.2d 1070, 1074 (Utah 1981); *see also Miller*, 2002 UT 6, ¶ 48, 44 P.3d 663. Duke and Cardenas have not challenged the validity of the arbitration clause contained within the operating agreement of WCDC. Nor have they made an argument as to why we should overturn our clear precedent in this area. We therefore reject their constitutional claims.

### III. THE ARBITRATOR'S DUTY TO MAKE A RECORD

¶ 25 The Arbitration Act provides that "[a]n arbitrator shall make a record of an award." Utah Code Ann. § 78–31a–120(1) (2002). Duke and Cardenas interpret this language to require that arbitrators make findings in support of an award. While the arbitrator in this case included written comments supporting his award, he stated that they were "not to be construed or taken to be findings of fact or conclusions of law." Duke and Cardenas accordingly argue that the arbitrator did not fulfill the statutory requirement of making "a record of an award."

¶ 26 We decline to address this argument because Duke and Cardenas failed to preserve it for appeal. " '[A]s a general rule, claims not raised before the trial court may not be raised on appeal.' " *State v. Cram*, 2002 UT 37, ¶ 9, 46 P.3d 230 (quoting *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346). In order to be preserved, an issue must be raised in the trial court such that the trial court has an opportunity to rule on the issue. *Spears v. Warr*, 2002 UT 24, ¶ 11, 44 P.3d 742.

¶ 27 In their briefing, Duke and Cardenas argue that the issue was raised below during an exchange between their attorney and the district court. In that exchange, their attorney expressed some confusion over the status of the arbitrator's written comments and questioned whether the court intended to include them in his judgment confirming the award. Nowhere, however, did counsel for Duke and Cardenas mention Utah Code section 78–31a–120(1) or raise the argument that the award was somehow defective because it included "comments" rather than "findings." Because this argument was not adequately raised to allow the district court an opportunity to rule on it, it was not properly preserved.

¶ 28 We will not address the merits of an argument that has not been preserved absent either plain error or exceptional circumstances. *State v. Winfield*, 2006 UT 4, ¶ 14, 128 P.3d 1171. "When a party seeks review of an unpreserved [issue], we require that the party articulate an appropriate justification for appellate review." *State v. Pinder*, 2005 UT 15, ¶ 45, 114 P.3d 551. Duke and Cardenas have made no effort to argue that this court should consider their unpreserved argument because of plain error or exceptional circumstances. Therefore, because the issue has not been preserved, and because no justification for appellate review has been articulated, we decline to reach it.

### IV. ATTORNEY FEES

¶ 29 Duke and Cardenas assert that the district court abused its discretion in refusing to award them attorney fees under Utah Code section 78–31a–126(3). This section provides that "[o]n application of a prevailing party to a contested judicial proceeding under Section 78–31a–123, 78–31a–124, or 78–31a–125, the court may add reasonable attorney's fees and other reasonable expenses of litigation incurred in a judicial proceeding after the award is made." Utah Code Ann. § 78–31a–126(3) (2002). Because Duke and Cardenas lost in the district court and did not prevail on this appeal, they are not prevailing parties entitled to attorney fees under this statute.

¶ 30 Relying on the same statute, Utah Code section 78–31a–126(3), the Grahams also assert that they are entitled to an award of their costs and attorney fees incurred in connection with this appeal. We have noted under a previous version of this provision that courts may award fees incurred during an appeal. *Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 952 (Utah 1996) (interpreting Utah Code Ann. § 78–31a–16 (2002) (repealed 2003)). Because an appeal is a contested judicial proceeding after an arbitration award is

made, Utah Code section 78–31a–126(3) also authorizes courts to award fees for appeals relating to the validity of an arbitration award.

¶ 31 The award of attorney fees and costs under this statute is not automatic, however, but is left to the discretion of the court. *Paul deGroot Bldg. Servs., L.L.C. v. Gallacher,* 2005 UT 20, ¶ 23, 112 P.3d 490. Because the statute itself gives no guidance as to how this discretion should be exercised, we look to the policies behind it. *See Buzas Baseball,* 925 P.2d at 953; *Paul deGroot,* 2005 UT 20, ¶¶ 22–23, 112 P.3d 490. The inclusion of an attorney fees provision within the Arbitration Act "suggests that our policies favor the enforceability of arbitration awards and discourage relitigation of valid awards." *Buzas Baseball,* 925 P.2d at 953. Against this policy of finality, we must balance the need not to unduly burden parties with the threat of fees when they have legitimate concerns about the legal validity of an award.

¶ 32 To balance these competing concerns, we assess the merits of the party's arguments. An appeal that has little legal support would likely merit an award of fees to discourage unnecessary delays and costs in enforcing an award, while a close case would not. In light of the Arbitration Act's mandate of broad authority to arbitrators to craft remedies and our clear precedent establishing the constitutionality of arbitration, we find that Duke and Cardenas' appeal has little legal support. We therefore award the Grahams their reasonable attorney fees and litigation costs associated with this appeal and remand the matter to the district court to determine the amount of those reasonable fees. Because the Grahams did not cross-appeal the district court's judgment, which did not award fees, they are not entitled to any fees or costs associated with the prior proceedings before the district court.

## CONCLUSION

¶ 33 Utah Code sections 48–2c–710(3) and 48–2c–809(1) do not prohibit an arbitrator from expelling a member or removing a manager of an LLC. Additionally, the due process and open courts clauses of the Utah Constitution are not violated when members or managers are removed by an arbitrator so long as there is a valid arbitration agreement covering such issues. Because Duke and Cardenas did not prevail on this appeal, they are not eligible for attorney fees. We do, however, award reasonable attorney fees and costs associated with this appeal to the Grahams. We therefore affirm the district court's order confirming the arbitration award and remand to the district court for the purpose of determining the amount to be awarded.

¶ 34 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice NEHRING concur in Justice PARRISH's opinion.