**2024 UT App 131**

## THE UTAH COURT OF APPEALS

GRIMMER & ASSOCIATES, PC,
*Appellee and Cross-appellant,*

*v.*

THE NRLA, LLC,
*Appellant and Cross-appellee.*

Opinion
No. 20220978-CA
Filed September 12, 2024

Third District Court, Salt Lake Department
The Honorable Kent R. Holmberg
No. 220901118

Cameron M. Hancock, Rod N. Andreason, Justin W.
Starr, Adam D. Wahlquist, and Jacob A. Green,
Attorneys for Appellant and Cross-appellee

Richard D. Burbidge, Carolyn LeDuc, and Clancey S.
Henderson, Attorneys for Appellee
and Cross-appellant

JUDGE JOHN D. LUTHY authored this Opinion, in which JUDGES
GREGORY K. ORME and RYAN M. HARRIS concurred.

LUTHY, Judge:

¶1     The law firm Grimmer & Associates (Grimmer) agreed to represent The NRLA, LLC (NRLA) in litigation for a reduced hourly rate combined with a contingency fee. After NRLA accepted an offer of stock shares to settle the litigation, Grimmer asserted its right to a portion of those shares. NRLA did not transfer the shares, and several years later the shares were converted into stock in a different company, dramatically increasing their value.

¶2    A fee dispute between Grimmer and NRLA ensued, and the matter went to arbitration. The parties' engagement agreement provided that in any arbitration, the rights and obligations of the parties would be "resolved in accordance with the then-prevailing law of the State of Utah, including the Utah Rules of Professional Conduct." NRLA argued that the present value of the shares constituted an unreasonable fee, in part because the fee violated the Utah Rules of Professional Conduct. Both parties provided expert testimony regarding the reasonableness of the fee, including under the Utah Rules of Professional Conduct. The arbitrator then issued an award in Grimmer's favor. She concluded that the Utah Rules of Professional Conduct "do not provide the decisional criteria for determining the reasonableness of attorney[] fees in civil litigation" and "do not control in this litigation." She also concluded that the contested fee was reasonable because it was reasonable when NRLA obtained the stock and "[o]nly NRLA's continuing breach [of the engagement agreement] prevented Grimmer from receiving its fee then."

¶3    Grimmer filed a petition in the district court for an order confirming the arbitration award, and NRLA moved for an order vacating the award. NRLA argued that the arbitrator had exceeded her authority and had refused to consider material evidence. The district court determined that the arbitrator had done neither and confirmed the arbitration award. Grimmer then sought an award of its fees and expenses incurred in the district court proceedings, and the court denied that petition. NRLA now appeals the court's decision confirming the arbitration award, and Grimmer cross-appeals the district court's denial of its petition for fees. We affirm in both respects.

BACKGROUND

¶4    In 2005, NRLA invested $2,000,000 in Paradigm Group, LC (Paradigm), receiving in return a 7% interest in the company. In

2012, after NRLA "became concerned that it would be unable to recover its investment . . . due to ongoing financial instability in Paradigm," NRLA retained Grimmer to "attempt[] to recover the two-million-dollar investment NRLA had made to Paradigm." NRLA met with Grimmer and developed "a strategy to recover assets from Paradigm"—assets that potentially included stock in a company called Galileo—"in order to make NRLA whole."

*The Engagement Agreement*

¶5 Rob and Nedra McKell, a married couple, were members and, in turns, the managers of NRLA. Nedra was the manager of NRLA until 2020; Rob was the manager thereafter. In February 2014, the McKells (individually) and NRLA (as an entity) together entered into an engagement agreement (the Engagement Agreement) with Grimmer. The Engagement Agreement outlined the terms of Grimmer's representation of NRLA against Paradigm. The Engagement Agreement also outlined the terms of Grimmer's representation of one or both of the McKells in two separate matters, including one in which the McKells anticipated filing a bar complaint and malpractice action against their former attorney.

¶6 As set forth in the Engagement Agreement, Grimmer agreed to represent NRLA under a hybrid fee arrangement involving a reduced hourly rate and a contingency fee:

> We have agreed that we will bill and collect a reduced/deferred rate which include[s] a contingent fee interest in the outcome of the case. . . . Our reduced or deferred rate is coupled with a contingent fee percentage owed upon the successful recovery of funds from the opposing party . . . .

¶7 The Engagement Agreement contained the following "Dispute Resolution" provision:

> Any dispute arising out of, in connection with, or in relation to the interpretation, performance or breach of this agreement—including any claim of legal malpractice (or similar claim) and any claim involving fees or expenses—shall be resolved by final and binding arbitration conducted in Utah County, Utah, administered by and in accordance with the Utah Uniform Arbitration Act, and any judgment upon any award rendered by the arbitrator may be entered by any state or federal court having jurisdiction to do so.
>
> [NRLA] further acknowledges that, by so agreeing, [NRLA] waives the right to a jury trial. [NRLA] also acknowledges that arbitration provides only limited discovery and that courts will enforce an award in arbitration without reviewing it for errors of fact or law.

¶8 The Engagement Agreement also contained the following "Choice of Law" provision:

> In any proceeding (whether in arbitration, in court, or in any other tribunal), all questions concerning the rights and obligations of [NRLA] and [Grimmer] under this agreement that are determined to be governed by the law of a state shall be resolved in accordance with the then-prevailing law of the State of Utah, including the Utah Rules of Professional Conduct.

*The Settlement and Subsequent Changes in Stock Value*

¶9 NRLA ultimately settled its lawsuit against Paradigm for 250,000 shares of Galileo stock, which it received in May 2015. According to Grimmer, it became entitled at that time to 37,500 shares of Galileo stock, representing 15% (the agreed-upon

percentage under the contingency fee agreement) of the shares NRLA received in the settlement. The value of the stock at that time was less than two dollars per share.

¶10 The arbitrator who was later selected to resolve the fee dispute (the Arbitrator) found that "Grimmer made several attempts to collect its fee from NRLA," including by meeting with NRLA in June 2015, during which meeting Grimmer "discussed the need to transfer shares to pay [its] contingency fee," and by further discussing the matter with NRLA in August and October of that year. The Arbitrator further found that at some point in 2015, NRLA "requested additional time to make arrangements to transfer the stock, due to other legal matters that consumed [its] time and attention"; in June 2016, Grimmer "sent a letter . . . seeking to collect the stock"; in November 2017, Grimmer "sent a certified letter . . . seeking to effect a stock transfer"; in 2017 and 2018, Grimmer "contacted other attorneys who represented the McKells[] to solicit their help in obtaining the stock"; and in November 2020, Grimmer "sent a final letter." "Notably," the Arbitrator found that "at no time [during these years] did . . . NRLA contest Grimmer's right to receive the shares."

¶11 Between 2020 and 2021, Galileo was acquired by another company, Social Finance Inc. (SoFi). As a result, in exchange for its Galileo stock, NRLA received a combination of cash and 1,263,922 SoFi shares. The value of the SoFi shares was significantly higher than the previous value of the Galileo stock.

*Grimmer's Arbitration Claim*

¶12 In February 2021, Grimmer commenced arbitration against NRLA, asserting a single claim for breach of contract. Grimmer contended that it was entitled to "the consideration received by NRLA when it converted [Grimmer's] 37,500 contingency shares [in Galileo] during the acquisition [of Galileo by SoFi], namely, $600,208.48 and 188,426.4 [SoFi shares], plus interest." NRLA

responded by arguing, among other things, that Grimmer's claim was "barred, in whole or in part, as the requested fee is unreasonable or otherwise violates rule 1.5 of the Utah Rules of Profession[al] Conduct and related legal standards for the reasonableness of attorney fees."

¶13 The Arbitrator received briefing and evidence from the parties. The evidence included expert testimony from both sides regarding rules 1.5(a), 1.5(c), and 1.8 of the Utah Rules of Professional Conduct. *See generally* Utah R. Prof'l Conduct 1.5(a) (stating that "[a] lawyer shall not make an agreement for, charge, or collect an unreasonable fee" and providing "factors to be considered in determining the reasonableness of a fee"); *id.* R. 1.5(c) (stating that "[u]pon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement" showing, if there is a recovery, "the remittance to the client and the method of its determination"); *id.* R. 1.8 (stating that "[a] lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client" unless certain conditions are met).

¶14 The parties' experts also opined about the reasonableness of the fee Grimmer alleged it was owed. In the words of the Arbitrator, "neither expert took issue with the reasonableness of the fee if it had been paid when the case concluded in May 2015." Grimmer's expert "testified that [the] fee is reasonable today [as well], regardless of value, because it was earned by [Grimmer] in May 2015" and "[a]ny subsequent increase in [the] value of the shares cannot alter, after the fact, [Grimmer's] right to [the] fee." NRLA's expert, on the other hand, "opined that the value of the stock today makes the fee unreasonable, because the value and amount of work done on the case by [Grimmer] would not warrant a large fee." NRLA's expert "also relied on the Rules of Professional Conduct to conclude that the fee is not reasonable at this time."

*The Arbitration Decision*

¶15 On February 7, 2022, the Arbitrator issued a final arbitration decision in favor of Grimmer. The Arbitrator determined that Grimmer had been "entitled to receive 37,500 shares" of Galileo stock in May 2015 and that "NRLA breached the [Engagement Agreement] by withholding the shares."

¶16 The Arbitrator addressed NRLA's argument that the fee Grimmer sought "was not reasonable[] pursuant to the factors required by [r]ule 1.5(a)." In so doing, the Arbitrator first cited *Long v. Ethics & Discipline Committee of the Utah Supreme Court*, 2011 UT 32, 256 P.3d 206, noting that it was "clearly a case that involved a finding by the Ethics and Discipline Committee that [an attorney] had violated ethical rules" but that "[n]othing in the *Long* case suggests that [r]ule 1.5 is applicable in civil litigation." She then observed that in *Archuleta v. Hughes*, 969 P.2d 409 (Utah 1998), "a case in which [a] plaintiff alleged that her attorney had violated [r]ule 1.5 . . . by charging an excessive fee, the Utah Supreme Court concluded that 'the Utah Rules of Professional Conduct are not designed to create a basis for civil liability.'" (Quoting *id.* at 414.) Next, she cited *Strohm v. ClearOne Communications, Inc.*, 2013 UT 21, 308 P.3d 424, "a case also involving an excessive attorney fee claim," and noted that in *Strohm* our supreme court had "cited . . . the Preamble [of the Utah Rules of Professional Conduct] and pointed out that the Rules of Professional Conduct 'simply provide a framework for the ethical practice of law and failure to comply . . . is a basis for invoking the disciplinary process rather than a basis for contract tinkering.'" (Quoting *id.* ¶ 71.) The Arbitrator then quoted this portion of the Preamble to the Utah Rules of Professional Conduct: "The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule." The Arbitrator concluded:

> Based upon the Preamble to the Rules of Professional Conduct, and relevant case authority, I find that the Rules of Professional Conduct do not provide the decisional criteria for determining the reasonableness of attorney[] fees in civil litigation. While they are important for self-reflection and in disciplinary proceedings, they do not control in this litigation.

¶17 The Arbitrator then considered NRLA's assertion "that the fees sought by [Grimmer] are unreasonable, separate from the Rules of Professional Conduct." After noting the evidence indicating that Grimmer had attempted to collect the fee numerous times between the time it was earned and the time the Galileo shares were converted into SoFi stock, she concluded:

> NRLA kept the shares to which Grimmer was entitled. I agree with [Grimmer's expert] that the fee is reasonable today, because it was earned in 2015. Only NRLA's continuing breach prevented Grimmer from receiving its fee then. . . . [The SoFi purchase] provided a substantial benefit to both parties. Based upon [NRLA's] breach, [Grimmer] is entitled to the benefit of its fee, which now resides in the SoFi shares and associated cash.

Accordingly, the Arbitrator awarded Grimmer "189,588 shares of SoFi public stock, plus $657,570 in cash, plus interest from the date of trial, . . . representing the value of the 37,500 shares of Galileo stock that Grimmer earned."

*NRLA's OPC Complaint and Motions to Stay*

¶18 On February 17, 2022, after the Arbitrator issued her decision, Grimmer filed a petition in the district court for an order confirming the arbitration award. Within a week, NRLA responded by filing both (1) a motion with the Arbitrator asking

her to stay further proceedings and (2) a request and objection in the district court asking it to also stay further proceedings and deny Grimmer's petition for an order confirming the arbitration award. NRLA explained that "[a]t the Arbitrator's implied suggestion," it had filed a complaint against Grimmer in the Utah State Bar's Office of Professional Conduct (the OPC) based on alleged violations of rules 1.4, 1.5(a), 1.5(c), and 1.8(a) of the Utah Rules of Professional Conduct, and it requested that proceedings be stayed until resolution of that complaint. NRLA further contended that by "noting that [the Utah Rules of Professional Conduct] could only be applied in a disciplinary proceeding against [an] attorney," the Arbitrator had "'refused to consider evidence material to the controversy.'" (Quoting Utah Code § 78B-11-124(1)(c).)

¶19   The Arbitrator denied NRLA's motion for her to stay the proceedings, concluding that the issuance of a stay following the entry of an arbitration award was "beyond the scope of [her] role as an arbitrator under the Utah Uniform Arbitration Act." The Arbitrator also stated:

> I considered and addressed all claims submitted by either party. I considered and ruled on the import of the Utah Rules of Professional Conduct, and I found that they did not control the fees in this civil matter. I also found the fees were reasonable using criteria that I identified.

*The Proceedings in the District Court*

¶20   In March 2022, before the district court was able to rule on NRLA's request that it stay the proceedings and deny Grimmer's petition, NRLA filed a separate motion in the district court to vacate the arbitration award. NRLA argued that the court should vacate the award under Utah Code section 78B-11-124(1)(c), which requires vacation of an arbitration award if an arbitrator "refuse[s] to consider evidence material to the controversy . . . so

as to substantially prejudice the rights of a party to the arbitration proceeding," and under Utah Code section 78B-11-124(1)(d), which requires vacation of an award if an "arbitrator exceed[s] the arbitrator's authority." NRLA asserted:

> Because the [Engagement Agreement] required application and resolution of malpractice and similar claims under the Utah Rules of Professional [C]onduct (which the Arbitrator flatly ignored), NRLA's arguments and evidence related to the [rules] are necessarily 'material' evidence. Accordingly, the Arbitrator's refusal to consider this evidence mandates the [arbitration award] be vacated.

Additionally, NRLA contended that the Arbitrator's refusal to apply the Utah Rules of Professional Conduct constituted a "manifest disregard" of the law and of the Engagement Agreement because the parties had agreed to the scope of arbitration and the Arbitrator "unilaterally excluded an issue that the parties submitted to her . . .—i.e., application of the Utah Rules of Professional [C]onduct."

¶21   On August 4, 2022, the district court issued its ruling and order denying the motion to vacate, emphasizing that "[a] court's review of arbitration is tightly constrained."[1] The court

---

1. Also on August 4, 2022, the OPC responded to NRLA's bar complaint against Grimmer. The OPC stated that it had "determined that the evidence [was] insufficient to provide by a preponderance that [Grimmer] engaged in conduct that violates the ethical rules." It also stated that such "matters are (and in most cases already were) more appropriately addressed by the court" and that "the OPC ordinarily declines to prosecute matters that are more appropriately addressed elsewhere," including "matters

(continued…)

determined that the Arbitrator had "clearly considered but ultimately rejected as a legal matter NRLA's claim that the Rules of Professional Conduct could be applied to assess the reasonable[ness] of fees." The court explained that "NRLA's claim that the Arbitrator refused material evidence [was, therefore,] actually an argument challenging the Arbitrator's legal determination" that "the Rules of Professional Conduct 'do not provide decisional criteria . . . in civil litigation.'"

¶22 The court observed that the Arbitrator's determination that the Utah Rules of Professional Conduct do not provide decisional criteria in civil disputes "was based on governing Utah law and the [r]ules themselves." The court also explained that the Arbitrator's ruling "inherently defers issues of ethical or [r]ule violations (and any attendant implication to fees that are owed by a former client) to the disciplinary authority." Indeed, the court opined, "while the Engagement Agreement references the Rules of Professional Conduct, it would have been legally impermissible for the Arbitrator to adjudicate ethical violations or to actually apply the [r]ules in the adjudication of a contract enforcement claim" because "the parties have no standing to enforce the [r]ules." In the court's view, enforcement of the rules is "within the exclusive province" of the OPC, which "cannot be deprived of its authority in this regard by a contract between these two parties."

¶23 Based on the foregoing reasoning, the court concluded that the Arbitrator had "'applied the contract in an arguably reasonable manner'" (quoting *Evans v. Nielsen*, 2015 UT App 65, ¶ 21, 347 P.3d 32) and, accordingly, that there was "no cause to vacate the Arbitration Award under the theory that the Arbitrator [had] refused material evidence or . . . exceeded her authority."

---

such as fee disputes and allegations regarding the quality of legal services which are more appropriately addressed by a court."

Thus, the district court denied NRLA's motion to vacate and confirmed the arbitration award.

*Grimmer's Application for Attorney Fees and Costs*

¶24    After the district court issued its order confirming the arbitration award, Grimmer filed an application for attorney fees and costs. Grimmer relied on Utah Code section 78B-11-126, under which a court "may allow reasonable costs of [a] motion [to confirm an arbitration award] and subsequent judicial proceedings" and "add reasonable attorney fees and other reasonable expenses of litigation incurred in a judicial proceeding after the [arbitration] award is made." Utah Code § 78B-11-126(2)–(3). Grimmer argued that an award of costs and fees under this statute was merited here because "NRLA's challenge to the arbitration award . . . was not a close call." The district court disagreed, concluding that "whether the [A]rbitrator refused to consider material evidence or exceeded her authority was a close call." Thus, the court denied Grimmer's application for costs and fees.

## ISSUES AND STANDARDS OF REVIEW

¶25    NRLA appeals the district court's decision confirming the arbitration award. In reviewing such a decision, "we grant no deference to the court's conclusions of law, reviewing them for correctness." *Softsolutions, Inc. v. Brigham Young Univ.*, 2000 UT 46, ¶ 12, 1 P.3d 1095. "We review the district court's findings of fact under the clearly erroneous standard. More specifically, our scope of review is limited to the legal issue of whether the [district] court correctly exercised its authority in confirming . . . [the] arbitration award." *Id.* (cleaned up).

¶26    Grimmer cross-appeals the district court's decision denying Grimmer's application for attorney fees and costs under Utah Code section 78B-11-126. "[R]ecognizing the broad

discretion given to trial courts" in the matter of awards of attorney fees incurred in judicial proceedings following arbitration, appellate courts "review a trial court's decision to grant or not to grant attorney fees under the Utah [Uniform] Arbitration Act for an abuse of discretion." *Paul deGroot Bldg. Services, LLC v. Gallacher*, 2005 UT 20, ¶ 18, 112 P.3d 490.[2]

ANALYSIS

I. NRLA's Appeal

¶27    NRLA argues that the district court's confirmation of the arbitration award violated Utah Code section 78B-11-124, which directs courts to vacate arbitration awards under certain limited circumstances. NRLA asserts that under section 78B-11-124, the district court was required to vacate the arbitration award because the Arbitrator "exceeded [her] authority."[3] *See* Utah Code § 78B-11-124(1)(d). We disagree.

---

2. The attorney fees and costs provision now found in Utah Code section 78B-11-126 as part of the Utah Uniform Arbitration Act was previously found in section 78-31a-126 as part of the Utah Arbitration Act. *See Paul deGroot Bldg. Services, LLC v. Gallacher*, 2005 UT 20, ¶ 19, 112 P.3d 490. When this provision was renumbered, it was not materially altered. *Compare id.* ¶ 19 n.4 (quoting Utah Code § 78-31a-126 (2003)), *with* Utah Code § 78B-11-126. Accordingly, the standard of review articulated in *Paul deGroot* under the prior Utah Arbitration Act is fully applicable to the same issue under the current Utah Uniform Arbitration Act.

3. As it did below, NRLA also asserts that the Arbitrator "refused to consider evidence material to the controversy," which is listed in the statute as a separate ground for vacating an arbitration award, *see* Utah Code § 78B-11-124(1)(c). However, in NRLA's

(continued…)

¶28 As already noted, appellate review of a trial court's decision regarding an arbitration award "is limited to the legal issue of whether the trial court correctly exercised its authority in confirming, vacating, or modifying an arbitration award." *Softsolutions, Inc. v. Brigham Young Univ.*, 2000 UT 46, ¶ 12, 1 P.3d 1095 (cleaned up). And in turn, a trial court's review of an arbitration award "is an extremely narrow one giving considerable leeway to the arbitrator and setting aside the arbitrator's decision only in certain narrow circumstances." *Id.* ¶ 10 (cleaned up). "The trial court may not substitute its judgment for that of the arbitrator, nor may it modify or vacate an award because it disagrees with the arbitrator's assessment." *Id.* (cleaned up). While a trial court must vacate an arbitration award if it determines that an arbitrator has exceeded the arbitrator's authority, *see* Utah Code § 78B-11-124(1)(d), "the remedy of vacating an arbitration award . . . should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles," *Shipp v. Peterson*, 2021 UT App 25, ¶ 14, 486 P.3d 70 (cleaned up), *cert. denied*, 502 P.3d 271 (Utah 2021). "And in deciding whether the arbitrator exceeded its authority, we resolve all doubts in favor of arbitration." *Id.* (cleaned up).

¶29 NRLA's argument that the Arbitrator exceeded her authority is founded on its assertion that "[t]he Arbitrator's ruling is contrary to the plain language of the Engagement Agreement" and "renders [the Engagement Agreement's] reference to the

---

briefing it becomes clear that this argument is inextricable from NRLA's assertion that the Arbitrator exceeded her authority. NRLA traces the Arbitrator's refusal to consider the testimony of NRLA's expert related to the Utah Rules of Professional Conduct solely to the Arbitrator's determination that she could not apply those rules to NRLA's claims. Thus, NRLA does not have a standalone claim that the Arbitrator refused to consider material evidence. Accordingly, we do not address this issue further.

Utah Rules of Professional Conduct empty and useless." Stated another way, NRLA contends that it "did not receive [the arbitration it] bargained for."

¶30 NRLA is correct that "arbitration is a matter of contract law" and that "precisely because arbitration is a bargained-for remedy, an arbitrator cannot (manifestly) disregard the boundaries the parties have set for her." *Ahhmigo, LLC v. Synergy Co. of Utah*, 2022 UT 4, ¶ 42, 506 P.3d 536 (cleaned up). "To the contrary, arbitration contracts are to be enforced according to their terms, and in the manner to which the parties have agreed." *Id.* (cleaned up). For example, "if the parties' contract calls for Utah law, but the arbitrator prefers Colorado law and applies that instead," then "the arbitrator [has] deprived the parties of their bargained-for arbitration by disregarding the law that the parties agreed would apply" and the resulting arbitration award should be vacated. *Id.* ¶ 44. However, not all choice of law provisions are similarly unambiguous in their meaning and application.

¶31 Whether an arbitration agreement's choice of law provision is unambiguous is a legal question of contract interpretation. *See WebBank v. American Gen. Annuity Service Corp.*, 2002 UT 88, ¶ 22, 54 P.3d 1139 ("Whether an ambiguity exists in a contract is a question of law." (cleaned up)). And when faced with issues of contract interpretation, "as long as the arbitrator construe[s] and applie[s] the contract in an arguably reasonable manner," courts are not to "hear claims of . . . legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *Intermountain Power Agency v. Union Pac. R.R. Co.*, 961 P.2d 320, 323 (Utah 1998) (cleaned up).

¶32 From the foregoing, we glean the following principles: If an arbitration agreement's choice of law provision is inarguably unambiguous and the arbitrator refuses to follow it, the district court is required under section 78B-11-124(1)(d) to vacate the arbitration award on the basis that the arbitrator exceeded the

arbitrator's authority. On the other hand, if the arbitration agreement's choice of law provision is at least arguably ambiguous and the arbitrator applies an arguably reasonable construction of the provision, then the district court is not to disturb the resulting award on the basis that the arbitrator refused to follow the choice of law provision and thereby exceeded the arbitrator's authority.

¶33 Here, the Engagement Agreement's choice of law provision provides, in relevant part, that "whether in arbitration, in court, or in any other tribunal[], all questions concerning the rights and obligations of [NRLA] and [Grimmer] under [the Engagement Agreement] . . . shall be resolved in accordance with the then-prevailing law of the State of Utah, including the Utah Rules of Professional Conduct." The Engagement Agreement also expressly charges the Arbitrator with resolving "[a]ny dispute arising out of . . . the interpretation" of the Engagement Agreement. NRLA contends that "[t]he parties obviously included the Rules of Professional Conduct in the choice of law provision . . . *so they could be enforced*" and, therefore, that the choice of law provision has a single, unambiguous meaning— namely, that in a civil dispute over whether Grimmer's claimed fee is reasonable, the Utah Rules of Professional Conduct are to serve as a source of criteria for determining the reasonableness of the claimed fee. We agree that this is an arguably reasonable reading of the Engagement Agreement's choice of law provision. However, it is not the only arguably reasonable reading of that provision.

¶34 Another arguably reasonable reading of the Engagement Agreement's choice of law provision is that in a civil dispute over whether Grimmer's claimed fee is reasonable, "all questions"— including the question of whether the Utah Rules of Professional Conduct should be used as a source of decisional criteria—must be resolved in accordance with what Utah law, including the rules themselves, say about that issue. The Arbitrator plainly applied

this reading of the provision. In her decision on NRLA's motion to stay, she explained that her conclusion that "the Rules of Professional Conduct do not provide the decisional criteria for determining the reasonableness of attorney[] fees in civil litigation" was "[b]ased upon the Preamble to the Rules of Professional Conduct[] and relevant case authority." Our review of the arbitration decision confirms that the Arbitrator did base her decision on these sources. She analyzed various Utah cases—including *Long v. Ethics & Discipline Committee of the Utah Supreme Court*, 2011 UT 32, 256 P.3d 206, *Archuleta v. Hughes*, 969 P.2d 409 (Utah 1998), and *Strohm v. ClearOne Communications, Inc.*, 2013 UT 21, 308 P.3d 424—and the Preamble of the Utah Rules of Professional Conduct. Then, based on these sources, she determined that the Utah Rules of Professional Conduct did not provide the criteria for determining the reasonableness of the attorney fee Grimmer sought. The Arbitrator's implicit interpretation of the choice of law provision as requiring her to look to Utah law—including the Utah Rules of Professional Conduct themselves—to determine whether those rules may provide criteria for determining the reasonableness of an attorney fee is consistent with the language of that provision. The Arbitrator's interpretation of the choice of law provision is, therefore, at least an arguably reasonable one.[4] Thus, the district court was correct to "not substitute its judgment" on this legal question for that of the Arbitrator. *Softsolutions, Inc. v. Brigham Young Univ.*, 2000 UT 46, ¶ 10, 1 P.3d 1095 (cleaned up).

---

4. The Arbitrator's interpretation of Utah law, including the Utah Rules of Professional Conduct, was also reasonable. As even NRLA recognizes, our supreme court has determined that "nothing in our rules requires or even suggests that we can use [the Utah Rules of Professional Conduct] as a basis for invalidating otherwise-enforceable contractual provisions." *Strohm v. ClearOne Commc'ns, Inc.*, 2013 UT 21, ¶ 71, 308 P.3d 424.

¶35    NRLA contends that the Arbitrator's interpretation of the choice of law provision "renders its reference to the Utah Rules of Professional Conduct empty and useless." We are not convinced. The choice of law provision expressly contemplates the possibility of proceedings in a "tribunal" other than "arbitration" or "court" wherein "the rights and obligations" of the parties under the Engagement Agreement might be determined. This acknowledgment of potential proceedings in a tribunal other than arbitration or court suggests that the reference to the Utah Rules of Professional Conduct might be read as an agreement that any bar complaint against Grimmer stemming from its representation of NRLA in matters covered by the Engagement Agreement would be filed with the Utah State Bar. This reading is all the more reasonable in light of the fact that under the Engagement Agreement, the McKells had also personally retained Grimmer to "draft a bar complaint" against their prior attorney, implicitly putting Grimmer on notice that the McKells (on behalf of NRLA) likely would not hesitate to file a bar complaint against Grimmer as well if they came to believe that Grimmer had violated applicable rules of professional conduct. Moreover, as the district court observed, notwithstanding that the Engagement Agreement ostensibly required "[a]ny dispute arising out of, in connection with, or in relation to" the Engagement Agreement to be "resolved by final and binding arbitration," enforcement of the Utah Rules of Professional Conduct for discipline purposes is within the providence of the OPC, which "cannot be deprived of its authority in this regard by a contract between these two parties." *Cf. Duke Cap. LLC v. Proctor*, 2023 UT App 59, ¶ 25, 531 P.3d 745 ("Parties cannot avoid or extinguish by contract a court's subject-matter jurisdiction established through constitutional or statutory pronouncement." (cleaned up)). For these reasons, we disagree that the Arbitrator's reading of the choice of law provision necessarily rendered its reference to the Utah Rules of Professional Conduct meaningless. Accordingly, the Arbitrator's reading of the choice of law provision remains arguably reasonable, and, again, the district

court was correct to not substitute its judgment for that of the Arbitrator.

## II. Grimmer's Cross-Appeal

### A.  Grimmer's Fees and Costs Incurred Before the District Court

¶36    In its cross-appeal, Grimmer asserts that the district court abused its discretion by denying Grimmer's application for attorney fees and costs incurred in the proceedings before the district court. Grimmer's arguments in this regard are unavailing.

¶37    The Utah Uniform Arbitration Act directs that after confirming an arbitration award, "[a] court may allow reasonable costs of the motion and subsequent judicial proceedings" and that "[o]n application of a prevailing party . . . , the court may add reasonable attorney fees and other reasonable expenses of litigation incurred in a judicial proceeding after the award is made to a judgment confirming . . . an award." Utah Code § 78B-11-126(2)–(3). Our supreme court has observed that this "grant of authority to award attorney fees is unlike most other grants of such authority by statute in Utah" because it "provides no guidance to the court in determining when to award attorney fees, which most Utah statutes do." *Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 953 (Utah 1996).[5] Our supreme court has also explained that "by selecting the word 'may' to describe

5. The analysis in *Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941 (Utah 1996), was conducted under a predecessor statute to current section 78B-11-126. *See id.* at 952. That predecessor version of the statute and the current version of the statute are materially different in only one relevant respect; namely, the predecessor version did not expressly limit the parties to whom an award of fees might be made to only prevailing parties. *Compare id.* (quoting Utah Code § 78-31a-16 (1996)), *with* Utah Code § 78B-11-126.

the authority of the trial court, the legislature [has] clearly signaled an intention to yield discretion to courts over whether to award attorney fees for matters covered by the statute." *Paul deGroot Bldg. Services, LLC v. Gallacher*, 2005 UT 20, ¶ 22, 112 P.3d 490.[6]

¶38    In *Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941 (Utah 1996), the court offered guidance as to when an award of fees incurred in post-arbitration judicial proceedings might amount to an abuse of discretion, saying that "it is difficult to conceive of an award of attorney fees to a prevailing party" that would amount to an abuse of discretion. *Id.* at 953. The "only" circumstance the court could "imagine" where an award of fees in this context would be an abuse of discretion was "where a trial court awarded attorney fees to a party who did not prevail in the litigation or who challenged an [arbitration] award and prevailed only as to some very minor point but lost as to all major points." *Id.* Subsequent to *Buzas Baseball*, however, the legislature amended the statute to allow for an award of fees only to prevailing parties, thus eliminating the one situation imagined by our supreme court in which a court might abuse its discretion by awarding fees under the statute. *See supra* note 5.

¶39    Although *Buzas Baseball* addressed the question of when an award of fees under the statute would not be proper, it left "unaddressed possible scenarios in which a trial court would

---

6. The analysis in *Paul deGroot Building Services, LLC v. Gallacher*, 2005 UT 20, 112 P.3d 490, was conducted under a version of the statute subsequent to the one in effect in *Buzas Baseball* but prior to the version now in effect. *Compare Paul deGroot*, 2005 UT 20, ¶ 19 n.4 (quoting Utah Code § 78-31a-126 (2003)), *with* Utah Code § 78-31a-16 (1996), *and* Utah Code § 78B-11-126. The version of the statute in effect at the time of *Paul deGroot* is not materially different from the current statute. *Compare* Utah Code § 78-31a-126 (2003), *with* Utah Code § 78B-11-126.

abuse its discretion by *failing* to award attorney fees." *Paul deGroot Bldg. Services, LLC*, 2005 UT 20, ¶ 22 (emphasis added). In *Paul deGroot*, however, the court seized the opportunity to address the subject of limits on a trial court's discretion to deny an award of fees under the statute. *See id.* ¶ 23. The *Paul deGroot* court first observed that, other than the noted amendment allowing for fee awards to prevailing parties only, "the modified statutory language [still] offer[ed] no guidance as to when attorney fees would or would not be appropriate." *Id*. Then, on the basis of its prior reasoning in *Buzas Baseball* and the continued lack of guidance in the statute itself, the court endorsed the following principle as the touchstone for analyzing whether a trial court has abused its discretion by denying an award of fees: "a trial court may properly exercise its discretion . . . by denying attorney fees to a party who prevails against a challenge to the validity of an arbitration award." *Id.* In other words, given the opportunity to articulate a limiting principle under which a trial court might be deemed to have abused its discretion by failing to award fees to a prevailing party, the court declined to do so. *See id.* We therefore cannot but read the decision in *Paul deGroot* as an acknowledgment that, as with the granting of a fee award, there are very limited circumstances under which the failure to award fees under the statute would be an abuse of discretion.

¶40   The landscape changed slightly two years later when the supreme court issued its opinion in *Duke v. Graham*, 2007 UT 31, 158 P.3d 540.[7] In *Duke*, two parties who prevailed on appeal from

---

7. The appeal in *Duke v. Graham*, 2007 UT 31, 158 P.3d 540, was decided under the same version of the statute that was in effect in *Paul deGroot*. *See Duke*, 2007 UT 31, ¶ 29; *Paul deGroot*, 2005 UT 20, ¶ 19 n.4. And, as already noted, the version in effect at the time of *Paul deGroot* and *Duke* is not materially different from the current version. *Compare* Utah Code § 78-31a-126 (2003), *with* Utah Code § 78B-11-126. Therefore, *Duke* also remains applicable to the current version of the statute.

a district court's order confirming an arbitration award asked the supreme court to award them the attorney fees they had incurred on appeal. *See id.* ¶¶ 4–5, 30. The supreme court again observed that "[t]he award of attorney fees and costs under this statute . . . is left to the discretion of the court." *Id.* ¶ 31. It then said that "[b]ecause the statute itself gives no guidance as to how this discretion should be exercised, [the court would] look to the policies behind" the statute to help it decide, in the first instance, whether to grant an award of fees to the prevailing parties on appeal. *Id.* The court then explained:

> The inclusion of an attorney fees provision within the Arbitration Act suggests that our policies favor the enforceability of arbitration awards and discourage relitigation of valid awards. Against this policy of finality, we must balance the need not to unduly burden parties with the threat of fees when they have legitimate concerns about the legal validity of an award.
>
> To balance these competing concerns, we assess the merits of the party's arguments. An appeal that has little legal support would likely merit an award of fees to discourage unnecessary delays and costs in enforcing an award, while a close case would not.

*Id.* ¶¶ 31–32 (cleaned up). Ultimately, the court found that the appellants' position had "little legal support," and it therefore awarded the appellees their reasonable attorney fees associated with the appeal. *Id.* ¶ 32.

¶41 Notably, while the *Duke* decision articulates principles that can serve as guides to other courts deciding whether to award fees under the statute in the first instance, the decision does little to illuminate the outer limits of those courts' discretion for purposes of appellate review. At most, we glean from *Duke* the principle

that at some point a case may present a close enough call on the issue of whether an arbitration award should have been confirmed, modified, or vacated that an award of fees to the prevailing party would be an abuse of discretion. *See id.*

¶42　In sum, while *Duke* provides some general guiding principles, we perceive in the legislature's language and the supreme court's caselaw as a whole nearly no tether to a trial court's discretion when deciding whether to award attorney fees to a prevailing party under section 78B-11-126.

¶43　Against this backdrop, Grimmer urges us to nevertheless recognize two concrete limits to a trial court's discretion to deny to a prevailing party an award of fees under section 78B-11-126 and to then apply those limits here. We address each potential limit in turn.

### 1.　Adequate Findings

¶44　First, Grimmer observes that in *Paul deGroot*, after the supreme court affirmed the broad discretion given to trial courts under the statute but before it affirmed the trial court's decision not to award fees to the prevailing party in that case, the supreme court stated that "[t]he trial court [had] adequately articulated its reasons for declining to award [the prevailing party] his attorney fees." 2005 UT 20, ¶ 24. On the basis of this statement, Grimmer asks us to hold that a trial court abuses its discretion if it fails to adequately articulate its reasons for declining to award attorney fees to the prevailing party in post-arbitration judicial proceedings. Grimmer then asks us to conclude that the district court here failed to adequately articulate its reasons for denying an award of fees to Grimmer.

¶45　Even assuming for purposes of our discussion that Grimmer actually preserved its challenge to the adequacy of the district court's findings, the district court did articulate its reason for not granting Grimmer's fee request. Specifically, the court

based its denial of Grimmer's fee request on its determination that "whether the [A]rbitrator refused to consider material evidence or exceeded her authority was a close call." This finding provides an adequate basis for the court's decision not to award fees. *See Duke*, 2007 UT 31, ¶¶ 31–32 (explaining that when an appeal from a proceeding challenging an arbitration award presents "a close case," an award of fees likely is not merited).

### 2. Compatibility of the Court's Decision on Fees and Its Confirmation of the Arbitration Award

¶46　Grimmer next urges us to "recognize an abuse of discretion . . . when the district court's decision on an application for fees is contrary to the court's previous ruling regarding the confirmation, vacatur, or modification of an arbitration award." Grimmer then contends that the district court's determination that NRLA's motion to vacate the arbitration award presented "a close call" is at odds with the court's order denying NRLA's motion to vacate the arbitration award. We are not convinced.

¶47　The court's order denying NRLA's motion to vacate the arbitration award contained a lengthy and nuanced analysis of the issues NRLA raised in its motion. The court's thorough discussion of these issues—particularly of whether "the Arbitrator had to reach a determination as to whether there was any violation of the Utah Rules of Professional Conduct in adjudicating the contract claim"—supports the court's determination that NRLA's motion to vacate presented a close call.

¶48　Furthermore, the court's determination that the motion to vacate presented a close call was not "contrary to" its order denying the motion to vacate, as Grimmer claims. The caselaw discussed above clearly contemplates situations in which a party may prevail in post-arbitration proceedings yet be unsuccessful in receiving an award of costs and fees, *see Paul deGroot Bldg. Services, LLC v. Gallacher*, 2005 UT 20, ¶ 23, 112 P.3d 490, so these rulings are not inherently discordant. Nor does Grimmer's observation

that the district court did "not mince words" at various points in its order denying NRLA's motion to vacate convince us that the court's conclusions there are incompatible with its later determination that the motion to vacate presented a close call. Simply because a court is unequivocal in its final written reasoning does not mean that it did not rightfully struggle to reach its ultimate ruling precisely because the case presented a close call.

¶49 For example, Grimmer points to the district court's statement that "there [was] no basis" for it to rule in NRLA's favor on the motion to vacate. But this does not demonstrate that the case did not present a close call because the court ultimately had to decide whether there was a basis to rule for NRLA no matter how close of a call the case presented. Grimmer also points to the court's statement that "[b]ased on the caselaw and controlling authority, the inverse of NRLA's argument is true." But again, the court had to reach that conclusion in order to rule in Grimmer's favor, even if divining the appropriate outcome in light of the controlling authorities presented a close call. In short, our reading of the district court's order denying NRLA's motion to vacate—including each of the statements therein that Grimmer points to as examples of where the court did not mince its words—does not convince us that the court's findings and conclusions there were incompatible with its later determination that the motion presented a close call.

¶50 Ultimately, under the controlling statute and our supreme court's decisions interpreting it, trial courts enjoy nearly untethered discretion when considering applications for fees and costs in post-arbitration judicial proceedings, and the district court did not abuse its discretion in declining to award Grimmer the costs and fees it incurred in the district court proceedings here.

B.      Grimmer's Fees and Costs on Appeal

¶51     Finally, Grimmer contends that if we "reverse[] the district court's order denying Grimmer's application for attorney fees, Grimmer is also entitled to recover its attorney fees, costs, and expenses for this cross-appeal." Because we do not reverse on this point, we do not award appellate fees on this basis.

CONCLUSION

¶52     The district court did not err in confirming the arbitration award because the Arbitrator did not exceed her authority in making the award. And the district court did not abuse its discretion in declining to award Grimmer its costs and fees. We affirm.

_____